Nos. 75,234
75,235
75,487
75,491

STATE OF KANSAS, *Appellant*, v. WILLIAM W. HARLIN, *et al.*,
*Appellees.*
(925 P.2d 1149)

Opinion filed October 25, 1996.

*Joe Shepack*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellant.

*Lisa Nathanson*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the briefs for appellees William W. Harlin and Curtis Cox.

*Thomas B. Frost*, of Topeka, argued the cause and was on the brief for appellee Gregory Chaney.

The opinion of the court was delivered by

McFARLAND, C.J.: William W. Harlin, Curtis Cox, and Gregory Chaney, inmates of Ellsworth Correctional Facility, violated prison rules and discipline was imposed in the form of disciplinary segregation, restriction of privileges, loss of good time, fines, or a combination thereof. Criminal charges were subsequently filed in the Ellsworth County District Court against the three individuals based upon the same incidents from which the disciplinary proceedings had arisen. The defendants filed motions to dismiss the criminal cases based upon claims they were violative of the Double Jeopardy Clauses of the United States and Kansas Constitutions. The district court granted the motions, and the State appeals therefrom.

The underlying facts may be summarized as follows.

### William W. Harlin

On November 28, 1994, and March 17, 1995, Harlin struck a correctional officer on duty at the institution. In disciplinary proceedings, he was found guilty of battery (K.A.R. 44-12-324) and sentenced to the aggregate of 82 days' segregation, 111 days' restriction of privileges, and fined $50. Based upon these same incidents, two separate complaints were later filed in the district court, each charging Harlin with battery against a law enforcement officer, a violation of K.S.A. 21-3413(a)(2), a level 7 person felony. In one case, 94-CR-149, Judge Rohleder denied the motion to dismiss; in the other case, 95-CR-64, Judge Bennington granted the motion. Upon rehearing the motion to dismiss in No. 94-CR-149, Judge Bennington reversed Judge Rohleder's earlier order and dismissed the case on grounds of double jeopardy.

### Curtis Cox

On October 16, 1994, six balloons containing marijuana were taken from Cox's wife, who was in the prison to visit Cox. Correspondence indicating Cox and his wife had developed a plan to deliver the marijuana to Cox had been previously intercepted. In disciplinary proceedings, Cox was found guilty of conspiring to introduce contraband into a penal institution, a violation of K.A.R. 44-12-1101 and K.A.R. 44-2-103. Cox was sentenced to 21 days' segregation, 21 days' restriction of privileges, and fined $10. He was later charged in the Ellsworth County District Court with one

count of solicitation to introduce contraband into a penal facility, a violation of K.S.A. 21-3826 and K.S.A. 21-3303, a level 9 non-person felony, and one count of delivery of marijuana, a violation of K.S.A. 1995 Supp. 65-4163, a level 3 drug felony. The charges were dismissed on grounds of double jeopardy.

## Gregory Chaney

On June 9, 1995, Gregory Chaney struck a correctional officer on duty in the Ellsworth Correctional Facility. In a disciplinary proceeding, Chaney was found guilty of battery, a violation of K.A.R. 44-12-324, and was sentenced to 28 days' segregation, 21 days' restriction of privileges, and the loss of 60 days of good-time credits. He was later charged in the Ellsworth County District Court with battery against a law enforcement officer, a violation of K.S.A. 21-3413, a level 7 person felony. The district court dismissed the charge on grounds of double jeopardy.

## Standard of Review

The facts upon which the district court based its decision are uncontroverted. Where the facts are uncontroverted, a trial court decision that double jeopardy applies is subject to de novo review on appeal. *In re C.M.J.*, 259 Kan. 854, 857, 915 P.2d 62 (1996).

## Double Jeopardy Defined

We recently discussed double jeopardy in *In re C.M.J.*, 259 Kan. at 857, stating:

"'The Fifth Amendment Double Jeopardy Clause of the United States Constitution states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." The double jeopardy guaranty is enforceable against the states through the Fourteenth Amendment. *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). Kansas also enforces an analogous double jeopardy clause in Section 10 of the Kansas Constitution Bill of Rights. It states: "No person shall . . . be twice put in jeopardy for the same offense." The double jeopardy protection guaranteed in the Kansas Constitution Bill of Rights is equivalent to the protection guaranteed in the United States Constitution. See *State v. Cady*, 254 Kan. 393, 396-97, 867 P.2d 270 (1994).' [*State v. Mertz*, 258 Kan. 745, 749, 907 P.2d 847 (1995)].

"In *Mertz*, we summarized the scope of the double jeopardy protections:

'The Double Jeopardy Clause of the United States Constitution provides three different types of protection for a person charged with a crime. Double

jeopardy protection shields an accused from: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.' 258 Kan. 745, Syl. ¶ 3."

## Issue

The issue is broadly stated to be whether the Double Jeopardy Clause precludes the State from prosecuting an inmate who has previously been disciplined by prison authorities for the same conduct. The district court answered the question affirmatively and dismissed the charges. The actual issue is narrower. It is long-established law in Kansas that prison discipline imposed for violation of prison regulations does not bar subsequent prosecution under criminal laws for the same conduct. See *Collins v. State*, 215 Kan. 489, 524 P.2d 715 (1974), and *State v. Williams*, 208 Kan. 480, 493 P.2d 258 (1972). The issue before us may be more accurately stated as being whether two cases of the United States Supreme Court require the application of the Double Jeopardy Clause to bar the prosecution herein as held by the district court. These two cases are *United States v. Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892 (1989), and *Montana Dept. of Rev. v. Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937 (1994).

## Discussion

This court has addressed the double jeopardy question in a variety of contexts since *Kurth Ranch* and *Halper* were decided. See *In re C.M.J.*, 259 Kan. 854 (expelling a juvenile from school and adjudicating him as a juvenile offender for the same conduct do not constitute double jeopardy); *State v. Jensen*, 259 Kan. 781, 915 P.2d 109 (1996) (assessment and partial or complete satisfaction of tax and penalty under the Kansas Drug Tax Act do not bar subsequent criminal prosecution for drug possession); *Mertz*, 258 Kan. 745 (an administrative proceeding suspending a driver's license does not bar subsequent criminal prosecution for driving under the influence of alcohol); *State v. Gulledge*, 257 Kan. 915, 896 P.2d 378 (1995) (assessment and payment of amounts owed under the

Kansas Drug Tax Act do not constitute criminal punishment for double jeopardy purposes).

In this case, there is no question that the criminal prosecution and conviction would constitute "punishment" for the illegal acts allegedly committed within the correctional institution. Thus, the determinative issue is whether the preceding administrative disciplinary penalties constituted "punishment" under post-*Halper-Kurth Ranch* double jeopardy jurisprudence. If so, a criminal prosecution which occurs after the administrative disciplinary procedures would be "multiple punishment" for the same offense. See *Mertz*, 258 Kan. at 751-52.

In our recent treatment of the issue in *Mertz*, the defendant was arrested for driving under the influence of alcohol. While criminal charges were pending, defendant's driver's license was administratively suspended based on the same incident. Defendant filed a motion to dismiss in the criminal case alleging a violation of his rights under the double jeopardy clause. He contended that he had already been punished by the administrative suspension of his driver's license. 258 Kan. at 747. Our analysis of *Halper* is helpful and will be quoted at some length as follows:

> "The crux of the defendant's argument is based on the definition of punishment in *United States v. Halper*, 490 U.S. at 448-49. In *Halper*, the defendant was convicted of collecting 65 false Medicare reimbursement claims. For this offense, the defendant was fined $5,000 and sentenced to prison. Later, the Government brought a civil action against the defendant, seeking $130,000 in civil penalties for the same offense. The Government's actual damages were $585. The court held that the civil monetary sanction of $130,000 was disproportionate to the harm actually caused and that it qualified as 'punishment.' Since the defendant had already been criminally punished, the civil sanction constituted multiple punishment and violated double jeopardy.
>
> "*Halper* states that in determining whether a sanction qualifies as 'punishment,' it is irrelevant whether a sanction is defined as a criminal or civil sanction. A civil sanction may constitute punishment if the sanction 'serves the goals of punishment,' such as retribution and deterrence. 490 U.S. at 448. As *Halper* states:
>
>> '[T]he determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty [which the sanction] may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

'These goals are familiar. We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence. [Citation omitted.] . . . From these premises, it follows that *a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment*, as we have come to understand the term [expansive definition of punishment]. [Citation omitted.] We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may *not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial but only as a deterrent or retribution* [restrictive definition of punishment]. 490 U.S. at 448-49.

"According to *Halper*, the court must use common sense to determine if a civil proceeding has a retributive, deterrent, or remedial purpose. The court must determine the 'purposes actually served by the sanction in question' from an objective viewpoint and not from the subjective viewpoint of the defendant because 'for the defendant even remedial sanctions carry the sting of punishment.' 490 U.S. at 447 n.7. Finally, *Halper* points out that it is a rule for the rare case. 490 U.S. at 449." 258 Kan. at 752-53.

Additionally, in *Mertz*, we held that *Kurth Ranch*, 128 L. Ed. 2d 767, did not apply. "In *Kurth Ranch*, the [drug] tax was found to be punishment not because of the *Halper* punitive purpose rule but because of several unusual features of the tax statute." *Mertz*, 258 Kan. at 755. *Kurth Ranch* is no more applicable to the issue before us herein than it was in *Mertz*.

More recently, in *In re C.M.J.*, we continued the double jeopardy discussion:

"Furthermore, a sanction is deemed to have a remedial purpose if it protects the public from harm. Even though it may appear to have punitive effects and might be interpreted as punishment, if it also can support a construction as remedial, it will not form the basis for a challenge on the grounds of double jeopardy. See *Mertz*, 258 Kan. 745, Syl. ¶¶ 8, 10.

"In short, a civil sanction may invoke double jeopardy protections as a form of 'punishment' only if it is grossly disproportional to legitimate State goals separate from those served by criminal prosecution. See *Kurth Ranch*, 128 L. Ed. 2d at 779, 781; *Halper*, 490 U.S. at 452. Neither the severity of the sanction nor the fact that it has a deterrent purpose automatically establishes that it is a form of punishment. See *Kurth Ranch*, 128 L. Ed. 2d at 779. Nor does the fact that the sanction has a punitive component invoke double jeopardy protection where the government's remedial interests are tightly intertwined with its punitive interests. See *U.S. v. Hernandez-Fundora*, 49 F.3d 848, 852 (2d Cir. 1995) (remedial interest of maintaining order in a prison setting permits sanctions with punitive

component, without being punishment for double jeopardy purposes). '[T]he fact that remedial concerns require "punishing" individuals for violent or other disruptive conduct [in an institutional setting] does not mean that the sanctions imposed constitute "punishment" for double jeopardy purposes.' *Hernandez-Fundora*, 49 F.3d at 852.

> " 'In *Halper*, the Supreme Court noted that "punishment serves the twin aims of retribution and deterrence." *Halper*, 490 U.S. at 448, 109 S. Ct. 1901. However, the converse is not true: a deterrent purpose does not automatically mark a civil sanction as a form of punishment. *Kurth Ranch*, [511] U.S. at 767, 114 S. Ct. at 1946. General deterrence is the foremost and overriding goal of all laws, both civil and criminal, and transcends the nature of any sanction.' *Bae v. Shalala*, 44 F.3d 489, 494 (7th Cir. 1995)." 259 Kan. at 859.

In *Murphy v. Nelson*, 260 Kan. 589, 921 P.2d 1225 (1996), we held that administrative segregation does not represent a significant and atypical hardship on the prisoner in relation to the ordinary incidents of prison life. However, we noted that disciplinary segregation was not at issue. In *Amos v. Nelson*, 260 Kan. 652, 923 P.2d 1014 (1996), we discussed judicial review of administrative and disciplinary segregation on claims of violation of due process.

We have not addressed the specific issue before us in the post *Halper-Kurth Ranch* context; however, a number of jurisdictions have and have unanimously rejected the application of double jeopardy in all but some rare extreme set of facts not before the court. See *United States v. Galan*, 82 F.3d 639 (5th Cir. 1996); *Meeks v. McBride*, 81 F.3d 717 (7th Cir. 1996); *United States v. Brown*, 59 F.3d 102 (9th Cir. 1995); *United States v. Hernandez-Fundora*, 58 F.3d 802 (2d Cir.), *cert. denied* 132 L. Ed. 2d 290 (1995); *Garrity v. Fiedler*, 41 F.3d 1150 (7th Cir. 1994), *cert. denied* 131 L. Ed. 2d 303 (1995); *United States v. Newby*, 11 F.3d 1143 (3d Cir. 1993), *cert. denied* 130 L. Ed. 2d 58 (1994); *People v. Watson*, 892 P.2d 388 (Colo. App. 1994); *State v. Walker*, 35 Conn. App. 431, 646 A.2d 209, *rev. denied* 231 Conn. 916 (1994); *State v. McKenzie*, 542 N.W.2d 616 (Minn. 1996); *State v. Nelson*, 275 Mont. 86, 910 P.2d 247 (1996); *State v. Lynch*, 248 Neb. 234, 533 N.W.2d 905 (1995); *Hernandez v. State*, 904 S.W.2d 808 (Tex. App. 1995); *State v. Fonder*, 162 Wis. 2d 591, 469 N.W.2d 922, *cert. denied* 502 U.S. 993 (1991).

*Hernandez-Fundora*, 58 F.3d 802, quoted favorably in *In re C.M.J.*, 259 Kan. 854, is a representative example of how courts have addressed this issue in other jurisdictions. In *Hernandez-Fundora*, the defendant was involved in an altercation with another inmate. Following the incident, he was placed in disciplinary segregation for at least 45 days. Later, defendant was criminally charged with and convicted of assault. He moved to dismiss the criminal charges on the ground that the prosecution would violate his constitutional right not to be punished twice for the same offense. 58 F.3d at 805.

The Second Circuit Court of Appeals first noted the longstanding general rule in such cases:

"It is by now well settled that 'punishment' imposed by prison authorities for infractions of prison regulations does not generally bar a subsequent criminal prosecution for the same conduct. *See United States v. Rising*, 867 F.2d 1255, 1259 (10th Cir. 1989) ('administrative punishment imposed by prison officials does not render a subsequent judicial proceeding, criminal in nature, violative of the double jeopardy clause') (collecting cases); *Kerns v. Parratt*, 672 F.2d 690, 691-92 (8th Cir. 1982) (per curiam) ('[Administrative] proceedings [based upon violation of prison disciplinary rules] do not place an offender in jeopardy for purposes of the double jeopardy clause. It is well-settled that there is no bar to separate criminal prosecution. . . .') (collecting cases); *United States v. Stuckey*, 441 F.2d 1104, 1105-06 (3d Cir.) (per curiam) ('Administrative sanctions imposed by prison officials upon a prisoner following his apprehension in connection with the commission of a crime is not a bar to subsequent prosecution for the crime in a court of competent jurisdiction.') (collecting cases), *cert. denied*, 404 U.S. 841, 92 S. Ct. 136, 30 L. Ed. 2d 76 (1971)." 58 F.3d at 806.

Hernandez-Fundora argued, as do the defendants here, that the United States Supreme Court's decision in *Halper* changed this general rule. 58 F.3d at 806. However, the appellate court, not persuaded by this argument, both distinguished *Halper* on its facts and acknowledged its usefulness as a guide.

"*Halper* opined that the civil fine at issue in that case constituted punishment for double jeopardy purposes because of the 'tremendous disparity' between the civil penalty and the government's actual damages, *id.* at 452, 109 S. Ct. at 1903-04, and concluded that a sanction that 'may not fairly be classified as remedial, but only as a deterrent or retribution' constitutes a punishment for double jeopardy purposes. *Id.* at 449, 109 S. Ct. at 1902. Punitive interests and remedial interests, however, are nowhere so tightly intertwined as in the prison setting,

where the government's remedial interest is to maintain order and to prevent violent altercations among a population of criminals. Accordingly, the mere fact that a sanction imposed by prison officials has a punitive component does not mean that the sanction constitutes 'punishment' for double jeopardy purposes." 58 F.3d at 806.

Finding no need to distinguish between administrative segregation and disciplinary segregation in this context, the court also relied on the reasoning in *Newby*, 11 F.3d 1143, as follows:

"*Newby* reasoned that 'prison disciplinary proceeding[s] . . . determine whether prison rules are broken and . . . maintain institutional order,' and accordingly do not bar subsequent criminal prosecutions for the same conduct. *Newby*, 11 F.3d at 1145. We find this reasoning persuasive.

"In applying the teachings of *Halper* to this issue, *Newby* described the government's remedial interest in the prison context as: 'to encourage good conduct and to maintain order in the prison, given that the prison is a place where good order and discipline are paramount because of the concentration of convicted criminals.' *Id.* Thus, the fact that remedial concerns require 'punishing' individuals for violent or other disruptive conduct does not mean that the sanctions imposed constitute 'punishment' for double jeopardy purposes. Rather, as *Newby* concluded its discussion of this issue:

'[A]s a general rule a prison disciplinary sanction does not bar subsequent criminal prosecution. The disciplinary sanctions imposed in this case are not so grossly disproportionate to the remedial goal of maintaining order and discipline in the prison as to constitute a punishment within the meaning of the Double Jeopardy Clause as interpreted in *Halper*.' " 58 F.3d at 806-07.

*Hernandez-Fundora* concluded that "subsequent prosecutions will be barred only in those exceedingly rare circumstances where the disciplinary sanction imposed is grossly disproportionate to the government's interest in maintaining prison order and discipline." 58 F.3d at 807. In Hernandez-Fundora's case, 45 days of disciplinary segregation did not constitute punishment for double jeopardy purposes, and his arguments were rejected. 58 F.3d at 807.

These cases from other jurisdictions, and indeed the trial court herein, did not have the benefit of the recently decided United States Supreme Court decision of *United States v. Ursery*, 518 U.S. ___, 135 L. Ed. 2d 549, 116 S. Ct. 2135 (1996), filed on June 24, 1996. Ursery was convicted of manufacturing marijuana. On appeal, the Supreme Court considered whether the subsequent in rem forfeiture proceedings violated the Double Jeopardy Clause.

The Court held that they did not. In doing so, the Court addressed arguments similar to those raised by defendants in this case: That *Halper* and *Kurth Ranch*, along with several other cases, had changed the way analysis should be conducted surrounding double jeopardy questions.

The *Ursery* Court rejected the *Halper-Kurth Ranch* argument as that argument is applied to double jeopardy and civil forfeitures. The Court stated:

"In sum, nothing in *Halper* [or] *Kurth Ranch* . . . purported to replace our traditional understanding that civil forfeiture does not constitute punishment for the purpose of the Double Jeopardy Clause. Congress long has authorized the Government to bring parallel criminal proceedings and civil forfeiture proceedings, and this Court consistently has found civil forfeitures not to constitute punishment under the Double Jeopardy Clause. It would have been quite remarkable for this Court both to have held unconstitutional a well-established practice, and to have overruled a long line of precedent, without having even suggested that it was doing so. *Halper* dealt with *in personam* civil penalties under the Double Jeopardy Clause; *Kurth Ranch* with a tax proceeding under the Double Jeopardy Clause . . . . None of those cases dealt with the subject of this case: *in rem* civil forfeitures for purposes of the Double Jeopardy Clause." 135 L. Ed. 2d at 567-68.

We recently applied the reasoning in *Ursery* to the Kansas Sex Offender Registration Act. *State v. Myers*, 260 Kan. 669, 683-85, 923 P.2d 1024 (1996). In that case, we noted that the United States Supreme Court had confined *Halper* "to the narrow context of its own facts: a civil penalty vastly disproportionate to the government's damages and expenses." 260 Kan. at 687.

The maximum penalties which could have been imposed against defendants here are restricted by regulation.

Inmates are subject to the administrative disciplinary procedure for violations of the code of conduct contained in K.A.R. 44-12-101 *et seq.*. This code addresses conduct ranging from personal cleanliness, tattoos, and body markings to assault and battery. The penalty for each offense depends on the seriousness of the offense. K.A.R. 44-12-1301 *et seq.* Class I offenses, for which these defendants were found guilty, include the following penalty provisions:

"(1) Disciplinary segregation, not to exceed 45 days;
"(2) loss of 'good time credits,' not to exceed six months;

"(3) extra work for up to two hours per day, not to exceed 30 days;

"(4) restriction to inmate's own cell, not to exceed a period of 10 days;

"(5) restriction from privileges, not to exceed 60 days;

"(6) a fine, not to exceed $20.00;

"(7) restitution; or

"(8) an oral or written reprimand." K.A.R. 44-12-1301(b).

"Good time credits" decrease the term of actual imprisonment "for good work and behavior over a period of time." K.A.R. 44-6-101(a). The inmate must act in such a way "as to merit reduction of the term of actual imprisonment" in order to earn good time credits. K.A.R. 44-6-101(c). The disciplinary board may remove the good time credits from the inmate's pool and reinstate the actual prison term under the procedures set out in K.A.R. 44-12-101 *et seq.* and K.A.R. 44-13-101 *et seq..* K.A.R. 44-6-101(e).

Fines are another possible sanction under these procedures. "Fines shall be fairly and appropriately used. Fines shall not be used in such a way as to disrupt family support payments, tax payments or court-ordered restitution payments, or to interfere with the inmate's ability to purchase basic hygiene items." K.A.R. 44-12-1307. When an inmate is fined for a violation, the fine "may be collected immediately" (K.A.R. 44-13-610) and "shall be deposited in the inmate benefit fund." K.A.R. 44-12-1305.

The regulations which govern prison disciplinary procedures herein and the actual discipline imposed clearly do not constitute a basis for the application of *Halper* and a determination that the prison discipline imposed rises to the level of punishment or multiple prosecution for double jeopardy purposes. Disciplinary rules and procedures are necessary for the control of dangerous and desperate individuals unwillingly confined in such institutions, in order to protect employees, inmates, and visitors, as well as the physical structure itself.

We conclude the district court erred when it held that the prosecution of the various criminal charges herein were barred as constituting double jeopardy by virtue of the prior disciplinary actions taken against the defendants under penal institution disciplinary regulations.

Reversed and remanded for further proceedings.