No. 80,521

GARRY L. SAMMONS, *Appellant*, v. CHARLES E. SIMMONS, *et al.*,
*Appellees.*
(976 P.2d 505)

Opinion filed April 16, 1999.

*Michael G. Coash*, of El Dorado, was on the brief for appellant.

*Julie Riddle*, of the Kansas Department of Corrections, of El Dorado, was on the brief for appellees.

The opinion of the court was delivered by

ABBOTT, J.: This is a habeas corpus action brought by Garry L. Sammons, who, at the time he filed the petition for habeas corpus, was a prisoner in the El Dorado Correctional Facility. During the pendency of his appeal, Sammons was released on parole and is presently serving a 2-year period of post-release supervision.

Sammons was disciplined in prison because he gave a picture of himself to a former roommate which, according to a prison officer's testimony, contained lightning bolts, the symbols of white supremacy groups, and letters the officer thought were KKK, a symbol of the Ku Klux Klan. Such symbols constituted a violation of inmate rules forbidding participation in or promotion of any unsanctioned prison group.

Sammons was found guilty and sentenced to a 14-day restriction and a $10 fine. He has served the restriction portion of his sentence. In at least one place in the record, Sammons states that he has paid the fine. On appeal to the district court, however, he testified under oath that the fine has not been paid. The record does not clarify Sammons' inconsistent representations.

Highly summarized, Sammons was restricted to his cell at all times for 14 days except while working and going to the shower. Canteen privileges were restricted, telephone privileges were cut

off, and all electrical outlets in the cell were shut off except for the overhead light. He also lost 60 days of good-time credits.

It is impossible to be absolutely certain what portion of Sammons' punishment is due to this disciplinary proceeding rather than a disciplinary proceeding occurring a few months earlier when Sammons refused to move to a different cell and received more severe punishment. For the purposes of this appeal, we accept that all punishment administered is due to the incident Sammons complains of.

Sammons contends he was deprived of due process and equal protection because the State did not make a complete record as Sammons interprets K.A.R. 44-13-502a, 44-13-403, and 44-13-406 require the State to do. He also claims a lack of due process because of insufficiency of evidence at all stages of the disciplinary process.

Sammons claims the loss of good-time credits and a drop in incentive level constitute a significant and atypical hardship from the underlying criminal sentence being served. In addition, Sammons claims the privilege and incentive level system is unconstitutional, as applied to him, because it imposes double jeopardy for the same offense and is an illegal ex post facto enactment.

The trial court examined the file and heard Sammons' testimony. The trial court then found that the disciplinary sentence imposed in the case was not a significant and atypical hardship upon Sammons.

We have previously held:

"Kansas courts will not review an inmate's claim that he or she was placed in either administrative or disciplinary segregation unless the Due Process Clause has been violated. The threshold test to determine a violation of due process is whether the state laws and regulations structuring the authority of prison officials contain language of an unmistakably mandatory character requiring that certain procedures must be employed and that punishment will not occur absent specified substantive predicates. If this threshold test is met, we examine whether the discipline imposed represents a significant and atypical hardship on the prisoner which was not contemplated within the realm of conditions of the original sentence. If it does not, there is no due process violation." *Amos v. Nelson*, 260 Kan 652, Syl. ¶ 4, 923 P.2d 1014 (1996).

Here, the trial court found the due process clause was not violated because the discipline imposed did not represent a significant and atypical hardship on Sammons which was not contemplated within the realm of conditions of the original sentence. We affirm the trial judge. See *Murphy v. Nelson*, 260 Kan. 589, 921 P.2d 1225 (1996); *Ramirez v. State*, 23 Kan. App. 2d 445, 932 P.2d 1265, *rev. denied* 262 Kan. 962 (1997); and *Davis v. Finney*, 21 Kan. App. 2d 547, 558-59, 902 P.2d 498 (1995).

"The law is clear that an inmate claiming violation of his constitutional rights in a habeas proceeding carries the burden of proof. *Johnson v. Stucker*, 203 Kan. 253, 260, 453 P.2d 35, *cert. denied* 396 U.S. 904 (1969); *Walling v. Francisco*, 22 Kan. App. 2d 588, 590, 920 P.2d 466 (1996)." *Anderson v. McKune*, 23 Kan. App. 2d 803, 807, 937 P.2d 16, *cert. denied* 522 U.S. 958 (1997). The applicable standard of review for determining whether an inmate has carried the burden of proof was set out in *Superintendent v. Hill*, 472 U.S. 445, 86 L. Ed. 2d 356, 105 S. Ct. 2768 (1985). This standard was then adopted in *Shepherd v. Davies*, 14 Kan. App. 2d 333, 338, 789 P.2d 1190 (1990). The *Anderson* court quoted the following from the *Hill* case:

" '[T]he requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was *some evidence* from which the conclusion of the administrative tribunal could be deduced . . ." [Citation omitted.] Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence in the record* that could support the conclusion reached by the disciplinary board. [Citations omitted.]' (Emphasis added.) 472 U.S. at 455-56." 23 Kan. App. 2d at 807-08.

In applying the "some evidence" standard, the *Hill* Court held that

"due process did not require evidence that 'logically preclude[d] any conclusion but the one reached by the disciplinary board' 472 U.S. at 457. The Court found that '[a]lthough the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board

were without support or otherwise arbitrary.' 472 U.S. at 457." *Anderson*, 23 Kan. App. 2d at 808.

Thus, in the case at hand, the district court was required to uphold the prison officials' disciplinary action if there was "some evidence" to support the prison hearing officers' determination that Sammons had committed a violation. Further, the Secretary of Corrections reviewed the hearing officer's guilty finding and found Sammons had offered no evidence that the action taken by the staff of the El Dorado Correctional Facility was wrong. Prison officials stated that lightning bolts represent prohibited prison groups and specifically named some of these groups in Sammons' disciplinary report. Thus, it cannot be said that the record in this case is so devoid of evidence that the finding by the hearing officer was without support or otherwise arbitrary. Therefore, the words Sammons wrote on the picture, together with the lightning bolts, provide "some evidence" to support the disciplinary action against Sammons.

In conclusion, there was clearly "some evidence" to support the prison officials' disciplinary action against Sammons and there has been no violation of Sammons' due process rights. Although the district court may have incorrectly found that it lacked jurisdiction to analyze whether the disciplinary case against Sammons violated due process, the district court correctly ruled that Sammons' petition should be summarily dismissed. An inmate's K.S.A. 60-1501 petition "must assert the deprivation of a constitutional right or the court is without jurisdiction to consider the claim. In the absence of such a claim, the petition should be summarily dismissed. [Citation omitted.]" *Anderson*, 23 Kan. App. 2d at 806-07.

Summary dismissal of a K.S.A. 60-1501 petition is appropriate unless the allegations are of shocking and intolerable conduct or continuing mistreatment of a constitutional stature. Sammons' allegations do not rise to this level. Thus, even if the district court incorrectly found that Sammons' disciplinary case was not subject to review, Sammons' petition was correctly dismissed. As we have held, "a trial court's reason for its decision is immaterial if the ruling is correct for any reason. [Citation omitted]." *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 110, 118, 936 P. 2d 714 (1997).

We turn now to Sammons' constitutional claim regarding the Internal Management Policies and Procedures (IMPP) 11-101 as applied to him. Sammons asserts that IMPP 11-101 is unconstitutional because it imposes double jeopardy and is an illegal ex post facto enactment. Due to Sammons' disciplinary violation, he was placed on restriction for 14 days, received a $10 fine, lost 60 days of good-time credits, and was dropped to a Level I. Sammons contends that this drop in status deprived him of privileges he had already earned and punished him twice for the same offense.

The Fifth Amendment Double Jeopardy Clause of the United States Constitution states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." In *Hudson v. United States*, 522 U.S. 93, 98-99, 139 L. Ed. 2d 450, 118 S. Ct. 488 (1997), the Court stated:

"We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, in common parlance,' be described as punishment. *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549[, 87 L. Ed. 443, 63 S. Ct. 379] (1943) (quoting *Moore v. Illinois*, 14 How. 13, 19 [1852]). The Clause protects only against the imposition of multiple *criminal* punishments for the same offense, *Helvering v. Mitchell*, 303 U.S. 391, 399[, 82 L. Ed. 917, 58 S. Ct. 630] (1938); see also *Hess*, [317 U.S. at 548-549] ('Only' 'criminal punishment' 'subject[s] the defendant to "jeopardy" within the constitutional meaning'); *Breed v. Jones*, 421 U.S. 519, 528[, 44 L. Ed. 2d 346, 95 S. Ct. 1779] (1975) ('In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution'), and then only when such occurs in successive proceedings, see *Missouri v. Hunter*, 459 U.S. 359, 366[, 74 L. Ed. 2d 535, 103 S. Ct. 673] (1983)."

In *State v. Harlin*, 260 Kan. 881, 925 P.2d 1149 (1996), this court set out the rule which applies to the present case. In *Harlin*, three inmates of the Ellsworth Correctional Facility violated prison rules, and discipline was imposed in the form of disciplinary segregation, restriction of privileges, loss of good-time credits, fines, or a combination thereof. Criminal charges were then filed against them in the Ellsworth County District Court. The grounds for the criminal charges were the same incidents that resulted in the disciplinary proceedings. The *Harlin* defendants filed motions to dismiss the criminal cases, claiming they were violative of the Double Jeopardy Clauses of the United States and Kansas Constitutions. The *Harlin*

court reversed the district court's decision to grant the motions and stated:

"The Double Jeopardy Clause of the United States Constitution provides three different types of protection for a person charged with a crime. Double jeopardy protection shields an accused from: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." 260 Kan. 881, Syl. ¶ 2.

Further, "[t]he double jeopardy protection guaranteed in Section 10 of the Kansas Constitution Bill of Rights is equivalent to the protection guaranteed in the Fifth Amendment to the United States Constitution." *Harlin*, 260 Kan. 881, Syl. ¶ 3. The *Harlin* court held that the prosecution of criminal charges was not barred "as constituting double jeopardy by virtue of the prior disciplinary actions taken against the defendants under penal institution disciplinary regulations." *Harlin*, 260 Kan. at 891. In the present case, multiple criminal punishments for the same offense were not imposed on Sammons and, thus, IMPP 11-101 does not constitute double jeopardy as applied to Sammons.

Sammons' second constitutional challenge contends that IMPP 11-101 is an ex post facto enactment because he is serving sentences for convictions which predate the 1996 enactment of IMPP 11-101. We decided this issue in *Vinson v. McKune*, 265 Kan. 422, 960 P.2d 222 (1998). In *Vinson*, the petitioners filed their K.S.A. 60-1501 petition and subsequent appeal of the district court's denial of that petition because they were already incarcerated in 1996 when IMPP 11-101 was implemented. Like Sammons, they were initially placed at Level III because they were already incarcerated before the enactment of IMPP 11-101. Level III is the highest level with the most privileges possible, and an inmate's privileges at Level III are the same as the privileges that existed prior to the implementation of IMPP 11-101. The *Vinson* petitioners, like Sammons, were reduced to Level I for violations of prison rules.

The *Vinson* petitioners claimed that the application of IMPP 11-101 to their respective cases denied them of due process of law under the Fourteenth Amendment to the United States Constitution. The *Vinson* court stated that "[w]e have resolved this issue adversely to the petitioners in our decision of *Stansbury v. Han-*

*nigan*, 265 Kan. 404, 960 P.2d 227[, *cert. denied* 119 S. Ct. 629] (1998). In accordance with the reasoning of that opinion, application of IMPP 11-101 to these petitioners does not implicate the Due Process Clause." 265 Kan. at 424-25.

The *Vinson* petitioners also claimed that the application of the incentive level system to their individual situations imposes additional punishment and is

"an ex post facto application of law which violates the United States Constitution. U.S. Const., art. I, § 9, cl. 3 and § 10, cl. 1 provide that no state shall pass any law which 'imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325-26, 18 L. Ed. 356 (1867)." 265 Kan. at 425.

The *Vinson* court held:

"Our most recent discussion of ex post facto legislation occurred in *Stansbury*, where we discussed application of the Ex Post Facto Clause of the United States Constitution in relation to Department of Corrections regulations involving 'good time credits.' In that case, we noted that in order for a law to be considered ex post facto, two critical elements must be present: The law must be retrospective, applying to events occurring before its enactment, and it must alter the definition of criminal conduct or increase the penalty by which a crime is punishable. 265 Kan. 404, Syl. ¶ 2. See *California Dept. of Corrections v. Morales*, 514 U.S. 499, 504, 131 L. Ed. 2d 588, 115 S. Ct. 1597 (1995); *Weaver v. Graham*, 450 U.S. 24, 29, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981). We quoted the United States Supreme Court's decision in *Weaver* for the following proposition:

'Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.' 450 U.S. at 30-31.

"The provisions of IMPP 11-101, as applied to the petitioners in their respective cases, do not increase punishment beyond what was prescribed when the crime was consummated. Depending upon the conduct of the inmate, IMPP 11-101 may affect the conditions upon which the inmate's sentence is served, but not to the extent that its effect constitutes a significant or atypical departure from the normal rigors of incarceration. See *Stansbury*, 265 Kan. at 404. Therefore, IMPP 11-101 is not 'retrospective and more onerous than the law in effect on the date of the offense.' The Department of Corrections has the right as well as the stat-

utory obligation to maintain good government within the Kansas corrections system. To this end, the department may, as it has done in this case, provide for security, privileges, and incentives to accomplish such an end consistent with the policy of the legislature expressed in K.S.A. 75-5201. IMPP 11-101 seeks to accomplish such results. Nothing contained within the IMPP implicates due process, and the provisions apply to all inmates. As such, IMPP 11-101 does not increase the penalty after the offense and does not implicate the Ex Post Facto Clause of the United States Constitution. Internal management of prisons is left to the sound discretion of the Department of Corrections, through the Secretary of Corrections and this court should not interfere where liberty or property interests are not involved. See *Sandin v. Conner*, 515 U.S. 472, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995)." 265 Kan. at 425-26.

In conclusion, IMPP 11-101 does not violate the constitutional rights asserted by Sammons. We have examined the evidence and find it sufficient to support the disciplinary action.

Affirmed.