NOT DESIGNATED FOR PUBLICATION

No. 121,095

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES J. SPOONER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; MICHAEL D. GIBBENS, judge. Opinion filed August 7, 2020. Affirmed in part, sentence vacated, and remanded with directions.

*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, for appellant.

*Meredith D. Mazza*, assistant county attorney, *Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., MCANANY, S.J., and BURGESS, S.J.

PER CURIAM: A jury convicted James J. Spooner of one count of battery on a state correctional officer. The district court sentenced Spooner to 122 months' imprisonment. Spooner appeals. After reviewing the record on appeal and the parties' briefs, we affirm in part, vacate the sentence, and remand the case for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On August 2, 2017, the State filed a complaint against Spooner charging him with one count of battery on a state correctional officer that occurred during Spooner's

1

incarceration at the Lansing Correctional Facility.

At a hearing on December 13, 2017, Spooner's appointed counsel informed the district court that a significant conflict had developed between him and Spooner. Spooner agreed. The district court allowed Spooner's counsel to withdraw and said it would appoint a new attorney. The district court set a hearing for January 10, 2018, to see if newly appointed counsel would be ready for a preliminary hearing but said it would not order Spooner's transport to that hearing. Spooner voiced his appreciation to the district court for not ordering his transport to the hearing.

The district court held the status hearing on January 10 with Spooner absent. Spooner's new counsel said he had not spoken to Spooner yet but was fine with scheduling a preliminary hearing. The district court replied that it wanted counsel to speak with Spooner first and set another hearing for January 24 to see if they had met.

On January 24, the hearing was held without Spooner present. Defense counsel had yet to speak to Spooner. The district court explained it would not order transport until defense counsel and Spooner had spoken. The district court scheduled another status hearing for February 14, 2018.

At the February 14 hearing, again without Spooner present, defense counsel said he was ready to schedule the preliminary hearing. The district court scheduled the preliminary hearing for March 28.

On November 26, 2018, the district court addressed and denied Spooner's previously filed motions for violation of his speedy trial rights and double jeopardy. The case proceeded to trial that day. The State presented the testimony of Special Agent James Gift with the Lansing Correctional Facility. Special Agent Gift testified that he reviewed the footage of the battery, and the video was played for the jury. The victim,

2

Officer Anthony McCurrie, who worked as a max yard officer at the time, also testified. McCurrie testified that it was his job to let inmates in and out of the max kitchen as needed. As an inmate, Spooner worked as a dining room porter and was not allowed in the kitchen. When Spooner tried to enter the kitchen, McCurrie stopped him and questioned him about his need to enter. Spooner began hitting McCurrie in the face. Before Spooner hit him, McCurrie had not made physical contact with Spooner.

Spooner testified on his own behalf and asserted his self-defense theory. Spooner admitted McCurrie had not touched him or made any physically aggressive move toward him before he hit McCurrie. Spooner alleged McCurrie had told him that McCurrie would take him to "the strip-out room to beat [his] ass like they used to do." Spooner claimed he hit McCurrie to draw more guards over and prevent McCurrie from taking him to the strip-out room. Spooner's testimony ended when the district court ordered him removed from the courtroom for cursing at the prosecutor and judge. The next day, the jury returned a verdict of guilty.

Sentencing was held on December 21, 2018. Before the sentencing date, Spooner filed a motion to arrest judgment and a motion for a new trial. The district court denied both motions. Spooner also filed a motion for a departure sentencing, requesting a durational or dispositional departure. Spooner's reasons for requesting a departure were: (1) the degree of harm was less than typical for that crime; (2) his crime would have been a misdemeanor if committed against someone that was not a state correctional officer; and (3) the conditions in prison made it necessary for Spooner to use force to assert his rights to respectful treatment.

The district court heard arguments from both attorneys on the departure motion. The district judge said, "Mr. Rook, I'm looking for a way to grant your Motion to Depart." But then the district judge continued, "It just seems to me really hard to do with the factors that we have available to us for a departure." The district court was concerned

because the battery had taken place in a very volatile and dangerous area, but, on the other hand, it noted McCurrie was not severely injured. The district court explained it would like to take all those factors into account, but the Legislature was pretty specific on the punishment for this crime. The district court imposed the mitigated presumptive prison sentence and sentenced Spooner to 122 months' imprisonment. The district judge explained to Spooner, "It's the lowest I can go here, Mr. Spooner. If I thought I could depart, I would. I just don't see, legally, how I can do it."

Spooner timely appeals.

## DID THE DISTRICT COURT VIOLATE SPOONER'S RIGHT TO BE PRESENT AT ALL CRITICAL STAGES OF THE CRIMINAL PROCEEDING?

For his first point, Spooner argues the district court violated his right to be present at all critical stages of the trial when it did not transport him for three status hearings in early 2018. Spooner asserts those status hearings were critical stages because they resulted in delays of the preliminary hearing and, if he had attended, Spooner could have shared his concerns about his speedy trial rights. Finally, Spooner argues the State cannot prove the error was harmless because Spooner's repeated assertions of his speedy trial rights "indicate he possibly may have objected to continuances if he had been present at the three hearings in question."

The State counters that those status hearings were not critical stages of the criminal proceeding because their only purpose was to determine if Spooner and his newly appointed counsel had met. The State also asserts Spooner's claim fails because the scheduling of a preliminary hearing is not a critical stage of the trial. Finally, the State argues that, if this court does find Spooner's rights were violated, the error was harmless because Spooner did not have a right to a trial in a certain number of days and nothing substantial was raised at the status hearings.

4

*Standard of Review*

Spooner concedes that he did not raise this issue below, but the constitutional and statutory rights to be present at all critical stages of the trial are so personal to the defendant that counsel's failure to object cannot waive them. *State v. Knighten*, 51 Kan. App. 2d 417, 427, 347 P.3d 1200 (2015). A defendant's right to be present at a critical stage of the proceeding is a legal question reviewed de novo. *State v. McDaniel*, 306 Kan. 595, 600, 395 P.3d 429 (2017).

ANALYSIS

*Critical Stage of the Criminal Proceeding*

The United States Constitution and Kansas statutory law guarantees a criminal defendant's right to be present at every critical stage of the criminal proceedings. The constitutional right arises from the Sixth Amendment right to confront witnesses and the due process rights guaranteed in the Fifth and Fourteenth Amendments. 306 Kan. at 600. K.S.A. 2017 Supp. 22-3405(a) codifies that right to be present and is functionally identical to the rights under the Confrontation and Due Process Clauses of the federal Constitution.

Here, Spooner asserts both his constitutional right and statutory right were violated.

"'A critical stage of the proceedings for the purposes of the right to be present encompasses '"any stage of the trial when the jury is in the courtroom or when the defendant's presence is essential to a fair and just determination of a substantial issue."'" *State v. Lowery*, 308 Kan. 1183, 1213, 427 P.3d 865 (2018). When the latter is at issue,

5

the defendant's presence is a condition of due process only as far as the defendant's absence would thwart a fair and just hearing. *McDaniel*, 306 Kan. at 601.

The right to be present is not unqualified and does not exist when the defendant's ""'presence would be useless, or the benefit but a shadow.'"" 306 Kan. at 601. Courts look to the function the defendant's presence would serve to the proceeding at issue, especially "'whether or not exclusion of the defendant interfered with the defendant's opportunity to test the evidence introduced against him, and whether or not it otherwise affected his opportunity to defend himself at trial.' 6 LaFave, Israel, King & Kerr, Criminal Procedure § 24.2(a) (4th ed. 2015)." 306 Kan. at 601-02.

A key contention in this argument revolves around what label to attach to the three hearings held on January 10, January 24, and February 14, 2018, without Spooner's attendance. Spooner asserts that, even though they were not called such, they should be considered continuance hearings because each resulted in the delay of the preliminary hearing. The State argues these status hearings were just status hearings and their only purpose was to check to see if Spooner's newly appointed defense counsel had met with Spooner yet. Further, the State asserts that, while the preliminary hearing itself is a critical stage, scheduling one is not.

Continuance hearings are critical stages of criminal proceedings where a defendant has a right to be present so the defendant has an opportunity to disagree with a continuance because any disagreement matters in a statutory speedy trial analysis. *State v. Dupree*, 304 Kan. 43, 49-50, 371 P.3d 862 (2016).

Kansas courts have held other important proceedings to not be critical stages of the criminal proceeding implicating a defendant's right to be present. A defendant does not have a right to be present at proceedings involving a matter of law, at remand proceedings, and when excusals from jury service and deferrals were decided before the

jurors being assigned to a particular case. *McDaniel*, 306 Kan. at 601. Motions in limine are matters of law, and the defendant's right to be present is not implicated. As are motions for acquittal and conferences to determine the sufficiency of the foundation of for the admission of testimony. *State v. Baker*, 236 Kan. 132, 136, 689 P.2d 803 (1984). In-chambers conferences discussing jury instructions where no final decision is made are not a critical stage of the criminal proceedings. *State v. Mantz*, 222 Kan. 453, 463-64, 565 P.2d 612 (1977). Nor is a defendant's right to be present implicated when the district court and counsel hold a conference in chambers to discuss the admissibility of evidence. See *State v. Antwine*, 4 Kan. App. 2d 389, 400-01, 607 P.2d 519 (1980).

Here, the State has the better argument. The defendant's presence was not essential to a fair and just determination of a substantial issue. The three status hearings had one purpose—to see if Spooner and his new counsel had met. When the district court allowed Spooner's previous appointed counsel to withdraw, it explained it would hold a status hearing on January 10, 2018, to see if newly appointed counsel had met with Spooner and that Spooner would not be transferred from Hutchinson for the brief meeting for which Spooner thanked the district court. At the January 10 hearing, defense counsel had not yet met with Spooner, so the district court scheduled another hearing for January 24. The district court did the same on January 24. On February 14, defense counsel said he was ready for a preliminary hearing, and the district court scheduled one. Prior to February 14, a preliminary hearing had never been scheduled. In actuality, the preliminary hearing was never continued.

It was understandable that the district court did not want to schedule the preliminary hearing until Spooner and his newly appointed defense counsel had met. Without a chance to meet with Spooner and discuss the facts of the case and trial strategy, the new counsel would have found it difficult to provide effective representation at the preliminary hearing. Additionally, Spooner's previous counsel withdrew because he

and Spooner had serious conflicts over trial strategy. To avoid any delays, the district court wanted Spooner and his counsel to meet before scheduling the preliminary hearing.

Panels of this court have held a defendant's absence from a motion hearing could be a critical stage of the trial because the defendant could not object to a continuance. *Howard v. State*, No. 106,782, 2012 WL 6217193, at \*6 (Kan. App. 2012) (unpublished opinion) (panel assumed motion hearing was critical stage because State did not contest trial court committed error); *State v. Taylor*, No. 104,455, 2011 WL 3795481, at \*3-4 (Kan. App. 2011) (unpublished opinion) (defendant could not object to counsel's continuance); but see *United States v. Acosta*, 185 Fed. Appx. 590, 591 (9th Cir. 2006) (unpublished opinion) (conference or hearing on legal question not a critical stage of trial). Those cases' reasoning do not apply here. First, Spooner does not suggest he would have objected to a continuance, only that there was a chance he possibly might have. In fact, he thanked the district court beforehand for not transporting him from Hutchinson. Second, nothing of substance was discussed at these status hearings, only whether Spooner and his new counsel had met. As defense counsel could easily answer that question, Spooner's presence was unnecessary to determine any issue. Nothing at the status hearings infringed on Spooner's right to be present at all critical stages of the criminal proceeding. The status hearings were not critical stages, and Spooner's right to be present was not violated.

*Constitutional Harmless Error*

In any event, Spooner's argument must fail based on the constitutional harmless error test. See *State v. Bolze-Sann*, 302 Kan. 198, 216, 352 P.3d 511 (2015).

"Under the constitutional harmless error standard, we may declare an error harmless only if '"the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to

8

the verdict."' [*State v.*] *Verser*, 299 Kan. [776,] 789[, 326 P.3d 1046 (2014)] (quoting [*State v.*] *Ward*, 292 Kan. 541, Syl ¶ 6[, 256 P.3d 801 2011]). " *Bolze-Sann*, 302 Kan. at 216.

When a defendant's right to be present during the critical stages of a criminal proceeding has been violated, Kansas courts examine harmlessness by focusing on four factors:

"(1) the strength of the State's case; (2) the existence of an objection from the defendant; (3) the nature of the proceeding from which the judge excluded the defendant and whether the communication concerned a critical or insignificant matter; and (4) the ability of posttrial remedies to mitigate the error." *State v. Walker*, 308 Kan. 409, 415, 421 P.3d 700 (2018).

The first factor weighs heavily in the State's favor. The surveillance video of the chow hall shows Spooner hit McCurrie. McCurrie did not touch Spooner before the attack. Spooner admitted that he hit McCurrie first. The only question was whether Spooner had justification to use force in self-defense. Spooner claimed McCurrie threatened to take him to the "strip-out room" and beat him up. McCurrie denied this claim and testified he just asked Spooner why he was going into the kitchen. The jury believed McCurrie and the video and found Spooner guilty. The evidence was overwhelming against Spooner.

The second factor, the existence of an objection from the defendant, also weighs in favor of the State. Spooner never objected to his absence from the three status hearings. In fact, he thanked the judge beforehand for not ordering his transport from Hutchinson to the first January status hearing. While Spooner was not required to object to the lack of his presence to preserve his appeal, it must be noted that Spooner never objected to his absence at the three status hearings. While Spooner did later suggest the delays from the

9

hearings should be time charged to the State for speedy trial purposes, he did not assert they violated his right to be present.

The third factor, the nature of the proceeding from which the judge excluded the defendant and whether the communication concerned a critical or insignificant matter, weighs in favor of the State. Spooner claims that the status hearings were actually continuances of the preliminary hearing. Until February 14, 2018, a preliminary hearing had not been scheduled. The two prior hearings were not continuances of the preliminary hearing. While the first two status conferences did delay the setting of the preliminary hearing, the overall effect was more than likely beneficial to Spooner. By insisting that counsel meet with Spooner before setting the preliminary hearing, it gave Spooner and his counsel time to confer, determine Spooner's desires, and discuss strategy, thereby reducing questions of ineffective assistance of counsel. The need for continuances of the preliminary hearing, once it was set, were minimized if not avoided all together. The critical nature of the proceedings must also be questioned when the substance of Spooner's claim, in light of his speedy trial rights, is to "indicate he *possibly may have objected* if he had been present at the three hearings in question." (Emphasis added.)

The fourth factor, the possibility of posttrial remedies, is also not helpful to Spooner. Short of reversing the conviction, no posttrial remedy can mitigate Spooner's absence from the status hearings. However, the hearings did not have any effect on the trial itself, and Spooner makes no claim to that effect. The district court has already determined there was no violation of Spooner's speedy trial rights, which Spooner does not challenge.

Analysis of the four factors lead to the conclusion that they weigh in the State's favor. The status hearings' only purpose was to check if Spooner and his new counsel had met. Substantial matters to the case were not discussed. Spooner cannot even say for certain that he would have, or even likely would have, objected to the multiple status

hearing. Instead, as stated in his brief: "Mr. Spooner's repeated assertion of his speedy trial rights indicate he possibly may have objected to continuances if he had been present at the three hearings in question." "Indicate," "possibly," and "may have" are three qualifiers that suggest even Spooner cannot say for certain that his rights were violated by his absence. At the very least, they suggest the error was harmless.

The evidence against Spooner was overwhelming. Spooner admitted that he hit McCurrie. Spooner asserts his absence at the status hearings led to a delay in his preliminary hearing. Spooner does not present any authority to this panel to show that he had a right to a preliminary hearing within a certain number of days. Spooner does not argue that the status hearings resulted in a delay of his trial. The hearings were only for the purpose of learning if Spooner and his new counsel had met—a good policy considering Spooner's previous counsel withdrew due to conflict between the two. No "reasonable possibility" exists that the three status hearings affected the outcome at trial in light of the entire record. The district court is affirmed on this issue.

DID DOUBLE JEOPARDY BAR SPOONER'S PROSECUTION?

For his second issue, Spooner argues the district court lacked jurisdiction to try him because he lost good time credits and was fined for hitting McCurrie. Spooner also admits *State v. Harlin*, 260 Kan. 881, 925 P.2d 1149 (1996), forecloses his argument and seeks to preserve this issue for federal review. The State concurs.

*Standard of Review*

When the facts are not in dispute, as here, a district court's decision on the application of double jeopardy is reviewed de novo. 260 Kan. at 883.

*Analysis*

The Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights equivalent protections prevent a person from being put in jeopardy twice for the same offense. U.S. Const. amend. V; Kan. Const. Bill of Rights, § 10. Within double jeopardy's scope is the protection against multiple punishments for the same offense. 260 Kan. at 883. Spooner argues this right was violated when he was tried and convicted for battery on a state correctional officer after he was already punished administratively with the loss of good time credits, a $20 fine, and placement in segregated custody.

The Kansas Supreme Court addressed the issue of whether *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), and *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994), applied to bar prosecution under criminal laws under the Double Jeopardy Clause when prison discipline was already imposed for the same conduct. *Harlin*, 260 Kan. at 884. In *Halper*, the United States Supreme Court held the Double Jeopardy Clause prevents a person from being subject to criminal prosecution and civil sanction when the purpose of the sanction is only deterrent or retribution, rather than remedial. 490 U.S. at 448-49.

The *Harlin* court found *Halper* does not apply to prison disciplinary rules and procedures because they are necessary to control "unwillingly confined" individuals to protect "employees, inmates, and visitors, as well as the physical structure itself." *Harlin*, 260 Kan. at 891. Therefore, prison discipline and criminal prosecution for the same action do not violate the Double Jeopardy Clauses. 260 Kan. at 891.

"The Kansas Court of Appeals is duty bound to follow precedent of the Kansas Supreme Court." *State v. Vrabel*, 301 Kan. 797, 809-10, 347 P.3d 201 (2015). If a case's

12

holding needs modified or overturned, that is the job of the Supreme Court, the Court of Appeals must follow existing precedent until informed otherwise. See 301 Kan. at 810.

Spooner acknowledges that precedent binds this panel to rule against him on this issue. He wishes to preserve his appeal for federal review. He has accomplished that. The district court is affirmed on this issue.

DID THE DISTRICT COURT ERR WHEN IT DENIED SPOONER'S DEPARTURE MOTION?

For his final point, Spooner argues the district court erred when it denied his departure motion. Generally, K.S.A. 2019 Supp. 21-6820(c)(1) bars appellate review of any presumptive sentence, but Spooner argues an exception applies because he asserts the district court improperly interpreted the sentencing statute as preventing the district court from granting a durational departure. Spooner argues the district court erred because it misinterpreted the statute and did not properly consider his departure factors at sentencing. The State argues the district court did consider Spooner's departure factors before denying the motion; therefore, this panel lacks jurisdiction to review Spooner's appeal because he received a presumptive sentence.

*Standard of Review*

The appropriate standard of review for durational sentencing departures is abuse of discretion. *State v. Spencer*, 291 Kan. 796, 807, 248 P.3d 256 (2011). Abuse of discretion exists when the district court's action (1) is one where no reasonable person would take the view adopted by the district court; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019). The party asserting an abuse of discretion bears the burden of demonstrating such an abuse exists. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

13

Spooner alleges the district court misinterpreted its statutory authority to grant a departure. When a district court misinterprets its statutory authority and refuses to consider a defendant's request for a departure, the appellate court may review whether the district court properly interpreted the sentencing statute. See *State v. Warren*, 297 Kan. 881, Syl. ¶ 1, 304 P.3d 1288 (2013). Statutory interpretation and jurisdictional challenges are legal questions subject to de novo review. *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014).

*Analysis*

K.S.A. 2019 Supp. 21-6815(a) directs the district court to impose a presumptive sentence provided by the guidelines, unless the district court finds substantial and compelling reasons to impose a departure sentence. The statute also provides a nonexclusive list of factors the district court may consider on the merits. K.S.A. 2019 Supp. 21-6815(c).

If the district court does impose a presumptive sentence, Kansas law precludes appellate courts from reviewing that sentence. K.S.A. 2019 Supp. 21-6820(c)(1). This rule holds true even if the sentence is the longest term in the presumptive grid box or the district court first denies a motion for departure. See *State v. Deal*, 293 Kan. 872, 890, 269 P.3d 1282 (2012) (aggravated term); *State v. Williams*, 37 Kan. App. 2d 404, 407-08, 153 P.3d 566 (2007) (denial of departure motion).

Spooner acknowledges the general rule but asserts an exception applies to his case. In *Warren*, the defendant argued the Kansas Court of Appeals could hear his appeal because the district court misinterpreted its sentencing options, despite the prohibition against reviewing presumptive sentences. In *Warren*, the district court found a small amount of drugs did not meet the statutory factors and was not a legally sufficient reason to depart. The Kansas Supreme Court adopted the findings of the Court of Appeals panel

14

which held it had jurisdiction to consider a limited argument that "'the district court wrongly interpreted its statutory sentencing authority and therefore refused to consider matters before it that were potentially relevant to the sentence.'" 297 Kan. at 885. Spooner asks this panel to do the same here.

After hearing arguments on Spooner's departure motion, the district court told Spooner it was "looking for a way to grant your Motion to Depart," but "[i]t just seems to me really hard to do with the factors that we have available to us for a departure." However, the district court then explained, "And those are all the factors that I would like to take into account, but the Legislature has been pretty specific on the punishment for this crime at this level with this criminal history." The court entered the sentence without ordering a departure. After doing so, the district court told Spooner, "It's the lowest I can go here, Mr. Spooner. If I thought I could depart, I would. I just don't see, legally, how I can do it."

Spooner argues that the district court's statements that the Legislature was specific on the punishment for battery on a state correctional officer and that it would depart if it could legally do it are evidence that the district court did not appropriately apply the sentencing statute.

The district court's statements are confusing. As for the district court's initial statement that it was hard to grant a departure based on the factors before the court, we might conclude that the court considered the factors presented by the defendant and found them wanting. But the district court did not stop there. It went on to say that while it would like to take the factors into account, the Legislature had prescribed a specific punishment for the crime in question. There is at least an implication that the court felt it was limited by the Legislature on what action it could take. The court went on to say that legally there was no way to grant a departure. Again, there is at least an implication that the court felt there were legal limits on the action it could take. At a minimum, the

15

statements appear inconsistent and create a lack of clarity as to what the district court believed its authority to be. As a result, the sentence must be vacated and the case remanded for further proceedings in particular as to the request for a departure. We remind the sentencing court on remand that it is not bound by the departure factors listed in K.S.A. 2019 Supp. 21-6815(c), which consists of a nonexclusive list.

Affirmed in part, sentence vacated, and remanded with directions.