(239 P.3d 900)
No. 103,700

KENNETH FROST, *Appellant*, v. DAVID R. MCKUNE, *Appellee*.

Opinion filed October 1, 2010.

*Michael G. Highland*, of Bonner Springs, for appellant.

*Matthew J. Donnelly*, legal counsel, Lansing Correctional Facility, for appellee.

Before STANDRIDGE, P.J., MARQUARDT and LEBEN, JJ.

LEBEN, J.: Inmate Kenneth Frost appeals his prison disciplinary sanction for possession of tobacco. He contends he didn't know that tobacco was in the sandwich being passed down by inmates from cell to cell; he says he thought that it was a sandwich and that he was just the unlucky one who was passing it along when a guard spotted the action. In this appeal, he claims that he was denied due process when he wasn't allowed to call two witnesses and that the evidence wasn't sufficient to convict him because no one showed he knew that tobacco was in the sandwich.

But the prison regulation at issue, K.A.R. 44-12-903(b), doesn't require knowledge: it boldly states that "[n]o inmate shall possess . . . tobacco products . . . ." Simple enough—Frost possessed the tobacco when the guard came by. And the witnesses who weren't called would merely have said that as far as they knew Frost didn't know tobacco was in the sandwich, a matter irrelevant in determining whether Frost had violated the regulation at issue.

According to the evidence presented to a prison hearing officer, Frost was awakened from his sleep one night by another inmate, Thomas Green, who wanted Frost to "pass a sandwich down the run" of cells. At the time, Frost was under administrative segregation, limiting his contact with other inmates, but he told Green that he'd help in passing the sandwich along. Green tossed the

sandwich toward Frost's cell, but Frost couldn't reach it. He threw his bedsheet out of the cell to try to drag the sandwich toward him, but a corrections officer spotted the movement. Frost successfully gained possession of the sandwich just before the corrections officer came on the scene. The officer saw Frost pull the sandwich into his cell and asked Frost for the sandwich; Frost gave it to him. The officer found tobacco inside. Frost testified that he was just helping to pass the sandwich along, like everyone else, and that he had no idea there was tobacco inside it. The corrections officer brought a disciplinary charge against Frost for possession of tobacco in violation of K.A.R. 44-12-903(b). Frost was found guilty and given a loss of good-time credits of 6 months (which was suspended unless he had further violations) and a fine of $20. Because the fine affects Frost's property, he was entitled to a minimum level of due process. See *Washington v. Roberts*, 37 Kan. App. 2d 237, 240, 152 P.3d 660 (2007).

Both of Frost's claims that we've mentioned thus are premised on the theory that if he didn't know tobacco was in the sandwich, then he didn't do anything wrong. But actual knowledge of possession is not what is prohibited here—mere possession of tobacco in prison violates K.A.R. 44-12-903(b). Its language is clear, and a properly adopted regulation has the force of law. Frost has not claimed on appeal either that K.A.R. 44-12-903 was adopted in some procedurally defective manner or that it is unconstitutional. Accordingly, we apply it according to its terms.

We confirm our plain-language reading of K.A.R. 44-12-903(b) by noting that there is some obvious logic behind it. Prison officials need to control various types of contraband to maintain discipline and security, and proof that an inmate has knowingly possessed contraband can be difficult. So some states and prisons have chosen to outlaw mere possession of contraband, whether knowing possession can be proved or not. See, *e.g.*, *People v. Ramsdell*, 230 Mich. App. 386, 391-99, 585 N.W.2d 1 (1998). The Kansas Secretary of Corrections obviously made that choice when K.A.R. 44-12-903(b) was adopted as written. If the Secretary had meant only to prohibit knowingly possessing contraband, the regulation could easily have said, "No person shall *knowingly* possess tobacco." We

decline to read words into this regulation that would so greatly change its meaning given the obvious difficulties inherent in controlling contraband in a prison setting.

We acknowledge that another panel of our court read "knowingly" into a similar prison regulation, K.A.R. 44-12-901(c), which by its own terms states that "[n]o inmate shall possess . . . any dangerous contraband." See *McCormick v. Werholtz*, 2010 WL 2978148, at *4 (Kan. App. 2010) (unpublished opinion). The inmate in *McCormick* argued that the contraband regulation was unconstitutionally vague because it did not require knowing possession. We are unable to find anything vague in the language used in the Kansas prison regulations forbidding possession of contraband; the *McCormick* court concluded that the regulation wasn't vague in the way the inmate suggested because there was an implied knowledge requirement. 2010 WL 2978148, at *4. The *McCormick* court relied by analogy on a criminal statute forbidding the possession of marijuana with intent to sell, where there must be proof that the defendant had control of the substance with the intent to possess it. See *State v. Rose*, 8 Kan. App. 2d 659, Syl. ¶ 4, 665 P.2d 1111, *rev. denied* 234 Kan. 1077 (1983). Whatever the rule may be when interpreting a criminal statute in a full criminal proceeding, we are unwilling to add the word "knowingly" to the clear language chosen by the Secretary of Corrections in K.A.R. 44-12-903(b). See *State v. Horn*, 291 Kan. 1, Syl. ¶ 1, 238 P.3d 238 (2010).

In sum, K.A.R. 44-12-903(b) clearly proscribes the possession of tobacco by any inmate. Frost admitted possessing the sandwich in which a corrections officer found tobacco. With this background, we will discuss Frost's arguments.

First, he contends that he was wrongly denied the ability to call two witnesses. Frost said each of the witnesses would have testified that Frost was merely one of the inmates passing the sandwich along and that Frost had no reason to know that there was tobacco in the sandwich. The hearing officer did not call these two witnesses but did call two other inmates Frost had requested. Those witnesses testified that Frost was just one of several inmates passing the sandwich down the cell line and that Frost had no reason to

know what was in the sandwich. The hearing officer said he didn't call the additional witnesses because their testimony would have been cumulative, irrelevant, or both. Given the evidence presented and our reading of K.A.R. 44-12-903(b), we agree. The hearing officer's explanation of why he didn't call the additional witnesses met the burden of persuasion that prison officials must meet in satisfying due-process requirements. See *Washington*, 37 Kan. App. 2d at 243-45.

Second, he contends that the evidence wasn't sufficient to find that he had violated K.A.R. 44-12-903(b). Given the need to maintain prison security, less evidence is needed to find that an inmate has violated a prison rule than is needed to find that a person has committed a crime. The prison hearing officer determines whether it is more likely than not that the prisoner has violated a prison regulation, K.A.R. 44-13-409, and we may reverse that decision only when there is not even "some evidence" supporting it. See *Sammons v. Simmons* 267 Kan. 155, 158-59, 976 P.2d 505 (1999). Under that standard, there is ample evidence here of Frost's violation—the corrections officer saw Frost pull the sandwich into his cell, and Frost admitted he possessed it.

Frost makes one final argument that his due-process rights were violated. He contends that the two inmates he requested as witnesses who *were* called to testify did so outside of his presence. Aside from Frost's claim on this point, our record does not disclose one way or another whether Frost was present when the witnesses testified. We assume, however, that Frost's allegation is true. Even so, only a minimal level of due process is owed in prison disciplinary hearings, which generally means written notice of the charges, an opportunity to call witnesses and present documentary evidence, an impartial hearing, and a written statement of the hearing officer's findings. *Washington*, 37 Kan. App. 2d 237, Syl. ¶ 3. While Kansas prison regulations do provide that testimony be taken in the inmate's presence, K.A.R. 44-13-403(l)(1), violation of procedural regulations does not by itself mean that there has been a constitutional due-process violation. 37 Kan. App. 2d 237, Syl. ¶ 4. Frost was in administrative segregation at the time of his offense, and Frost contends that the hearing officer went from Frost's cell

to that of the other witnesses to take their testimony. We further note that their testimony was exactly what Frost said it would be and that it matched the defense he sought to make.

The failure to hear the witnesses' testimony in Frost's presence without an adequate explanation may have violated his due-process rights. An inmate has a right to be present for the hearing, but that right may be limited when institutional concerns for safety or other correctional goals are at stake. In such cases, though, prison officials generally have a burden of persuasion to explain why institutional concerns outweigh the inmate's rights. See *Hogue v. Bruce*, 279 Kan. 848, 853-54, 113 P.3d 234 (2005). But even if we assume some violation of Frost's due-process rights by hearing from two witnesses outside his presence, even an error that denies a constitutional right may be deemed harmless if we can declare beyond a reasonable doubt that the error had little, if any, likelihood of changing the outcome of his disciplinary hearing. See *State v. Laturner*, 289 Kan. 727, 753, 218 P.3d 23 (2009). This is certainly such a case. A corrections officer saw Frost take the sandwich into his cell, and Frost admitted possession, albeit while denying knowledge that tobacco was in the sandwich. The witnesses heard outside Frost's presence all testified consistently with his defense of lack of guilty knowledge. Even if Frost had been present for all of the testimony, the outcome would have been the same.

The district court ruled against Frost's claims in a thoughtful written opinion rendered after a nonevidentiary hearing; Frost's attorney indicated that he did not wish to present any evidence beyond the documents already in the court's file. Because no evidence was presented in the district court and we are therefore in an equal position to review the matter, we have done so independently, without any required deference to the district court. See *Bellamy v. State*, 285 Kan. 346, 353, 172 P.3d 10 (2007); *Rice v. State*, 278 Kan. 309, 320, 95 P.3d 994 (2004). We too have concluded that Frost's claims have no merit. The judgment of the district court is therefore affirmed.