NOT DESIGNATED FOR PUBLICATION

No. 113,519

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DOUGLAS A. KLING,
*Appellant*,

v.

SAM CLINE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed November 13, 2015. Affirmed.

*Douglas A. Kling*, appellant pro se.

*Jon D. Graves*, legal counsel, of Kansas Department of Corrections, of Hutchinson, for appellee.

Before BRUNS, P.J., STANDRIDGE, J., and BURGESS, S.J.

*Per Curiam*: Douglas A. Kling—an inmate at Hutchinson Correctional Facility (HCF)—appeals a district court order summarily denying his K.S.A. 60-1501 petition, in which he seeks to challenge a disciplinary order finding him guilty of battery of a corrections officer and disobeying orders. On appeal, he raises several due process claims related to the disciplinary process, all of which are without merit. He also asserts that there was no evidence to support his convictions. Video surveillance of an altercation between Kling and a corrections officer provides sufficient evidence to sustain the disciplinary order. Lastly, he claims that the district court erred in assessing a partial filing fee against him. However, the district court is statutorily required to assess fees

1

against a petitioner in a habeas action where it appears from the face of the petition that the petitioner is not entitled to relief, as is the case here. We therefore, affirm.

FACTUAL AND PROCEDURAL BACKGROUND

This case centers on an altercation between Kling and Kansas Department of Corrections' (DOC) Officer Garcia that occurred in a medical observation cell around 2:30 in the morning of March 26, 2014. Kling claims that he began yelling and hitting the cell door in order to alert someone that he wanted to file a grievance for an issue regarding his medication. Officer Garcia arrived shortly thereafter, and Kling asserts that after exchanging words with Officer Garcia, he tried to look out of the cell door to see if there was someone else in the hallway and Officer Garcia shoved him back into the cell. Kling contends that Officer Garcia then charged into the cell "to continue his attack" and that he fought back to defend himself.

Officer Garcia prepared a disciplinary report, in which he claimed that he went to Kling's cell to try and calm him. Officer Garcia asserted that after opening the door, he had to block Kling to prevent him from leaving the cell and that he told Kling to calm down. After warning him to stay in his cell again, Officer Garcia stated that Kling "said a few more things and then hit me in the face" and continued hitting him until the response team arrived. At some point after writing the report, Officer Garcia added a handwritten note to the report requesting restitution for his glasses that were broken during the fight. Kling received a copy of the report on March 27, 2014, which charged him with battery of a corrections officer and disobeying orders. See K.A.R. 44-12-324; K.A.R. 44-12-304.

Two days after the incident, Kling filed a witness request form, asking that two other inmates who were being held in nearby medical observation cells testify regarding what they heard or saw. The request was eventually denied because "both inmates were unable to see anything."

2

On April 1, 2014, Kling requested video footage of the incident. Instead of providing Kling with the video, a different officer reviewed the footage the following day and gave the following summary of the video:

"On 3/26/14, at 2:37:10 A.M. Cpl. Garcia came to the door of ISO Cell #1 where I/M Kling #98624 was staying. Words were exchanged and Cpl. Garcia opened the door to the ISO Cell at 2:37:16 A.M. Between 2:37:16 and 2:37:43 both Inmate and Officer were what appears to be yelling and Cpl. Garcia backed out of the cell and was shutting the door when I/M Kling charged Cpl. Garcia at 2:37:44 A.M. Cpl. Garcia then pushed the I/M back and then the I/M charged the officer again, Cpl. Garcia then shoved the Inmate back into his cell and the Inmate caught himself on the side of the door seal. I/M Kling then swung on Cpl. Garcia inside of ISO Cell #1 in the face. Cpl. Garcia then struck the Inmate 2 times before going off camera. I/M Kling struck Cpl. Garcia 4 times in the head and face before going off camera. The fighting stopped at 2:39:22 A.M. when Cpl. Garcia comes back onto camera washing his hands. There are no staff witnesses on camera just I/M Kling and Cpl. Garcia. There is no audio for the cameras are not equipped."

On March 27, 2014, Kling was served a summons for a disciplinary hearing, which was originally set for April 4, 2014. The hearing was later continued because Officer Garcia was on medical leave. Kling was served a second summons on April 23, 2014, indicating that the hearing would be held on April 25, 2014. However, the hearing was again continued to May 12, 2014, because Kling requested additional time to prepare and Officer Garcia was on vacation.

On May 12, 2014, Kling was initially present at the hearing. However, while the hearing officer was going over the acknowledgements and inmate waiver of rights, Kling began to argue with the hearing officer. Kling continued to argue after the hearing officer warned him that doing so would result in his removal, so the hearing was held outside of his presence. Because of Kling's absence, another individual was sworn in as Kling's staff assistant who asked Officer Garcia why he opened the door to the cell to talk to Kling.

Officer Garcia stated that he did so because he did not want to have to yell so Kling could hear him.

The hearing officer concluded based on the preponderance of the evidence that Kling was guilty of the charges. The hearing officer sentenced Kling to 45 days' disciplinary segregation, 60 days' restriction, and 6 months' loss of good time. The hearing officer further ordered Kling to pay a $20 fine and $179 in restitution for Officer Garcia's broken glasses. Kling appealed to the Secretary of Corrections, who approved the decision on June 23, 2014.

Kling thereafter filed a petition for habeas corpus in Reno County District Court, and the district court held a nonevidentiary hearing on September 18, 2014. No transcript of the hearing appears in the record on appeal. Ultimately, the district court affirmed the Secretary of Corrections' decision in a written order entered on October 16, 2014. Kling subsequently filed a timely notice of appeal.

DID THE DISTRICT COURT ERR IN DENYING KLING'S DUE PROCESS CLAIMS?

*Standard of Review and Legal Maxims*

When a district court dismisses a petition for writ without conducting an evidentiary hearing, an appellate court exercises unlimited review. *Johnson v. State*, 289 Kan. 642, 648-49, 215 P.3d 575 (2009). In addition, appellate courts accept the facts set forth in the petition, and the petitioner must demonstrate—based on those facts—either shocking or intolerable conduct or some continuing mistreatment of a constitutional nature. *Schuyler v. Roberts*, 285 Kan. 677, 679, 175 P.3d 259 (2008). Similarly, whether due process has been afforded is a question of law over which an appellate court has unlimited review. *In re Habeas Corpus Application of Pierpont*, 271 Kan. 620, 627, 24 P.3d 128 (2001). In a habeas proceeding, the inmate claiming a constitutional violation

4

carries the burden of proof. *Sammons v. Simmons*, 267 Kan. 155, 158, 976 P.2d 505 (1999).

Courts follow a two-step analysis in considering an inmate's due process claim. The first step is to determine whether the State has deprived the inmate of life, liberty, or property; and if the State has done so, it must determine the extent and nature of the process due. *Hogue v. Bruce*, 279 Kan. 848, 850-51, 113 P.3d 234 (2005). Initially, the $20 fine implicates Kling's due process rights because the assessment of a fine—even a slight amount—triggers the due process clause. See *Anderson v. McKune*, 23 Kan. App. 2d 803, 807, 937 P.2d 16, *cert. denied* 522 U.S. 958 (1997).

Next, this court considers the amount of process Kling was due. The full panoply of rights due to a defendant in a criminal proceeding is not available in prison disciplinary hearings. *Hogue*, 279 Kan. at 851 (citing *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 [1974]). Our Supreme Court has outlined the basic procedures due to inmates:

> "The *Wolff* Court held that certain due process procedures in disciplinary hearings include an impartial hearing, a written notice of the charges to enable inmates to prepare a defense, a written statement of the findings by the factfinders as to the evidence and the reasons for the decision, and the opportunity to call witnesses and present documentary evidence." *In re Pierpoint*, 271 Kan. at 627.

Otherwise, the *Pierpont* Court did not elaborate on the definition of allowing prisoners to "present documentary evidence." In *Wolff*, the United States Supreme Court stated that an inmate should be allowed to call witnesses and present documentary evidence "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566. The Court was quick to qualify this language:

"We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." 418 U.S. at 566.

Indeed, Kansas law recognizes the wide discretion vested in prison officials who are charged with the control and administration of the State's penal institutions. *Hogue*, 279 Kan. at 852.

*Denying Request to View Camera Footage*

Kling first argues that the hearing officer deprived him of due process by not allowing him to view the video of the altercation. On April 1, 2014, Kling filed a request to review video evidence of the altercation. Instead of providing him the video footage, an officer not otherwise involved in the proceedings reviewed the tape and provided a summary the day after Kling requested the footage. The district court stated in its order dismissing Kling's petition that Kling "was not allowed to view the security video of the incident pursuant to legitimate security concerns that the inmates not see exactly what the cameras show."

K.A.R. 44-13-403(l)(1) generally provides that a hearing officer shall receive testimony and evidence in the presence of the accused inmate, "except that the accused inmate shall not be present when the hearing officer reviews any facility security videotape evidence." The Court of Appeals has already considered this issue and concluded that due process does not require that prison security videos be made available

6

to inmates who are subjects of prison disciplinary proceedings. *Swafford v. McKune*, 46 Kan. App. 2d 325, 331, 263 P.3d 791 (2011), *rev. denied* 294 Kan. 948 (2012).

Kling nevertheless argues with the holding in *Swafford* by simply rehashing the dissent in the case, which relied on federal cases recognizing a prisoner's right to review video evidence. See 46 Kan. App. 2d at 332-37. The majority in *Swafford* noted, however, federal courts are not in agreement on the issue. See 46 Kan. App. 2d at 331 (citing *Estrada v. Holinka*, No. 10-3313, 2011 WL 1740118, at *2 [7th Cir. 2011] [unpublished opinion]). Moreover, at least two other panels of this court have since agreed with *Swafford*. See *Requena v. Cline*, No. 108,114, 2013 WL 646497, at *4 (Kan. App. 2013) (unpublished opinion); *Hopson v. Roberts*, No. 107,670, 2012 WL 4795651, at *2 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1130 (2013). Because Kling has offered no other argument than the ones asserted in *Swafford*, the denial of access to the video footage did not violate his due process rights.

*Denying Request for Witnesses*

Kling briefly argues that the hearing officer's denial of his request to produce witnesses denied him due process. On March 28, 2014, Kling filed a witness request form, asking that the two other inmates who were being held in nearby medical observation cells testify regarding what they heard or saw. The hearing officer denied the request, stating that "both inmates were unable to see anything."

In making his argument, Kling fails to cite any authority. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013). Regardless, the record reveals that the hearing officer provided a reasonable basis for the denial, and the DOC has met its burden to show why such a denial was not arbitrary but was logically related to valid correctional

goals. See *Hogue*, 279 Kan. at 853; *Washington v. Roberts*, 37 Kan. App. 2d 237, 245, 152 P.3d 660 (2007). Kling's due process rights were not violated when the hearing officer denied his request to produce witnesses.

*Providing Notice of Restitution*

Kling next argues that he was not timely served with notice that Officer Garcia requested $179 in restitution for his broken glasses. K.A.R. 44-12-1306(a)(5) requires that when a hearing officer awards restitution in a disciplinary process, "[t]he inmate shall be given notice in the disciplinary report or, if necessary, in an amended disciplinary report served upon the inmate no later than 24 hours before the hearing of the amount and basis for seeking restitution."

The record reveals that Kling received adequate notice. On March 27, 2014, Kling acknowledged that he received an original copy of the disciplinary report. However, it appears that a note was later added that requested restitution "for replacement of lenses [and] frames (glasses) $179." The hearing was originally set for April 4, 2014, but was continued until April 25, 2014, because Officer Garcia was on medical leave. The same note that was added to the disciplinary report appears on the staff witness summons issued to Officer Garcia on April 23, 2014.

The next day, Kling was issued an inmate disciplinary summons for the April 25 hearing with the attached disciplinary report, which included the request for restitution. The hearing was eventually conducted on May 12, 2014. Kling received at least 24-hours' notice of the restitution claim. See *Whitney v. State*, No. 104,461, 2011 WL 445938, at *2 (Kan. App. 2011) (unpublished opinion) (The notice of restitution was proper where the inmate could not sign original report because he was in critical condition but received a second copy of the disciplinary report when his summons was served.).

*Conducting the Hearing Without Kling Present*

Lastly, Kling asserts that the hearing officer violated his due process rights by holding the hearing in his absence. "[T]he right to be present at the hearing is not absolute and may be limited by the competing concerns of maintaining institutional safety and other correctional goals." *Hogue*, 279 Kan. at 852. If an inmate is "disruptive or refuses to be present," the hearing officer may conduct the hearing in the prisoner's absence. K.A.R. 44-13-403(d). In such a situation, the hearing officer must appoint a staff assistant to stand in the place of the prisoner, and the hearing officer must state on the record the reason for the inmate's absence. K.A.R. 44-13-403(d).

Although an inmate generally carries the burden of proof in habeas proceedings, when prison officials deny prisoners some aspect of procedural due process, the "'burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners.'" *Hogue*, 279 Kan. at 853 (quoting *Grandison v. Cuyler*, 774 F.2d 598, 604 [3d Cir. 1985]). To satisfy this burden, prison officials must provide an explanation in either the disciplinary hearing record or through testimony presented in court. *Hogue*, 279 Kan. at 853 (citing *Ponte v. Real*, 471 U.S. 491, 497, 105 S. Ct. 2192, 85 L. Ed. 2d 553 [1985]). The justification cannot be arbitrary but must be logically related to maintaining institutional safety and other correctional goals. *Hogue*, 279 Kan. at 853.

In the present case, the hearing officer indicated that "inmate Kling became arguemenitive [*sic*] when I was explaining the Acknowledgement / Inmate Waiver of Rights form. I warned him . . . I will [*sic*] hold the hearing with out [*sic*] him and he ignored the warnings." In Kling's K.S.A. 60-1501 petition, he claimed that during the May 12 hearing, the hearing officer tried to get him to check a box stating that he was given 24-hours' notice of the hearing. Kling asserts that he told the hearing officer that he was never given a summons for the May 12 hearing and that he refused to sign the

9

acknowledgement form. He contends that the hearing officer told him that he did not need to receive a new summons because he was informed that the hearing would be held when Officer Garcia returned from vacation. Kling states that the hearing officer then determined that he was being uncooperative.

Indeed, the record on appeal contains a summons for the April 4 and April 25 hearings but does not contain a summons for the May 12 hearing. The DOC appears to concede that it never served Kling with a summons for the May 12 hearing but instead emphasizes the point that Kling is not guaranteed a perfect administrative hearing with the same level of rights as in a criminal proceeding. In making its argument, the DOC fails to recognize that it, rather than Kling, carries the burden to provide an explanation for excluding Kling from the hearing that is logically related to maintaining institutional safety and other correctional goals. See *Hogue*, 279 Kan. at 853.

The hearing officer's explanation states without elaboration that the hearing was held in absentia because Kling was argumentative. In his K.S.A. 60-1501 petition, Kling does not controvert that he was argumentative. Rather, he states that he argued with the hearing officer over whether he should have to sign the inmate waiver form indicating that he had received 24-hours' notice of the time of the hearing. Because appellate courts must accept the petitioner's facts and all their inferences as true, it is not unreasonable to expect an inmate to refuse to sign a box stating that he received at least 24-hours' notice of the time of the hearing when the record establishes that he, in fact, never received any such notice. See *Schuyler*, 285 Kan. at 679. Therefore, the DOC has not established a sufficient reason to exclude him from the hearing.

However, Kling's objection necessarily raises the question of whether the DOC's failure to serve a summons on Kling for the May 12 hearing is fatal to their case. Inmates are entitled to only a minimum level of due process, which generally implies written notice of the charges, an opportunity to call witnesses and present documentary evidence,

10

an impartial hearing, and a written statement of the hearing officer's findings. *Frost v. McKune*, 44 Kan. App. 2d 661, 662, 239 P.3d 900 (2010), *rev. denied* 292 Kan. 964 (2011). Although K.A.R. 44-13-403(l)(1) generally provides that a hearing officer must receive testimony and evidence in the presence of the accused:  "The mere fact that a hearing officer in a prison disciplinary case has not followed the Kansas Department of Corrections' procedural regulations does not of itself violate fundamental fairness that rises to an unconstitutional level." *Washington*, 37 Kan. App. 2d 237, Syl. ¶ 4.

One could argue that Kling received *more* due process than most inmates because the April 25 hearing was postponed until May 12 in part because Kling requested additional time to prepare his defense. Regardless, any error was harmless beyond a reasonable doubt because the entire record indicates that there is no reasonable possibility that the error affected the outcome of the disciplinary hearing. See *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). Video evidence establishes that Kling twice charged Officer Garcia who had to physically force Kling back into his cell both times before Kling began punching Officer Garcia in the face. See *Frost*, 44 Kan. App. 2d at 665 (finding that any perceived error that occurred when a hearing officer heard testimony from two witnesses outside the prisoner's presence was harmless beyond a reasonable doubt because of the weight of evidence against the prisoner). Therefore, we find that Kling was provided sufficient due process protections and that any perceived error was harmless beyond a reasonable doubt.

DID THE DISTRICT COURT PROPERLY DENY KLING'S K.S.A. 60-1501 PETITION?

*Standard of Review*

Appellate courts reviewing a prison disciplinary decision ask whether there is some evidence that supports the decision. *Sammons*, 267 Kan. at 158.

"'Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence in the record* that could support the conclusion reached by the disciplinary board. [Citations omitted.]'" 267 Kan. at 158 (quoting *Anderson*, 23 Kan. App. 2d at 807-08).

Due process does not require evidence that logically precludes any conclusion except the one reached below. *Sammons*, 267 Kan. at 158 (citing *Superintendent v. Hill,* 472 U.S. 445, 457, 105 S. Ct. 2768, 86 L. Ed. 2d 356 [1985]).

*Some Evidence to Support the Decision*

Kling makes an abbreviated argument that there was no evidence to support the hearing officer's decision. Kling was found guilty of battery of a corrections officer and disobeying orders. K.A.R. 44-12-324 defines battery as "the unlawful or unauthorized, intentional touching or application of force to the person of another, when done in a rude, insolent, or angry manner." Moreover, inmates must "promptly and respectfully obey any order, directive, or instruction given to the inmate by any employee of the facility." K.A.R. 44-12-304.

As previously discussed, there is ample evidence to find that Kling is guilty of both battery and disobeying orders. Officer Garcia submitted a report in which he claimed that after opening the door, Kling tried to leave his cell, so he had to shove Kling back into the cell and ordered him to calm down. Moreover, Officer Garcia stated that Kling continued to argue with him before Kling hit him in the face. The video evidence summarized by a different officer corroborates Officer Garcia's version of the events. Therefore, there is some evidence in the record to support his convictions.

12

DID THE DISTRICT COURT ERR BY ORDERING KLING TO PAY A PARTIAL FILING FEE?

*Standard of Review*

Appellate courts review the district court's assessment of court costs for an abuse of discretion. See *Amos v. Simmons*, 32 Kan. App. 2d 366, Syl. ¶ 3, 82 P.3d 859, *rev. denied* 277 Kan. 923 (2004); *Beauclair v. Heimgartner*, No. 112,452, 2015 WL 1636931, at *4 (Kan. App. 2015) (unpublished opinion). A district court abuses its discretion when its decision is (1) arbitrary, fanciful, or unreasonable, (2) based on an error of law, or (3) founded on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

*Order to Pay $75 Filing Fee*

Kling contends that the district court abused its discretion when it assessed a partial filing fee against him in the amount of $75. Despite Kling's argument, several statutes not only permit, but require a district court to assess costs against a petitioner upon summary dismissal. K.S.A. 2014 Supp. 60-1503(a) ("If it plainly appears from the face of the petition and any exhibits attached thereto that the plaintiff is not entitled to relief in the district court, the petition shall be dissolved at the cost of the plaintiff."); K.S.A. 2014 Supp. 60-1505(a) ("If the plaintiff is an inmate in the custody of the secretary of corrections and the motion and the files and records of the case conclusively show that the inmate is entitled to no relief, the writ shall be dissolved at the cost of the inmate."); K.S.A. 2014 Supp. 60-1505(d) ("If the court determines that the restraint is not wrongful, the writ shall be dissolved at the cost of the plaintiff.").

More specifically, Kling complains about having to pay the fee in light of the low funds in his prisoner bank account. But when a district court properly summarily dismisses a habeas petition, the court does not abuse its discretion by imposing costs on the petitioner regardless of the petitioner's financial status. *Fought v. State*, 14 Kan. App.

2d 17, 20, 781 P.2d 742, *rev. denied* 245 Kan. 783(1989); *Requena v. Cline*, No. 111,040, 2014 WL 3732022, at *7 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. ___ (July 27, 2015). Because Kling did not state a claim upon which relief could have been granted, the district court did not abuse its discretion by ordering Kling to pay the costs of his petition.

Affirmed.