NOT DESIGNATED FOR PUBLICATION

No. 113,955

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARCUS P. DUNLAP,
*Appellant*,

v.

JAMES HEIMGARTNER,
*Appellee*.

MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Opinion filed May 13, 2016.
Affirmed in part, reversed in part, and remanded with directions.

*Nancy Ogle*, of Ogle Law Office, L.L.C., of Wichita, for appellant.

*Michael J. Smith*, of Kansas Department of Corrections, of El Dorado Correctional Facility, for
appellee.

Before ARNOLD-BURGER, P.J., GREEN and LEBEN, JJ.

*Per Curiam*:  Marcus P. Dunlap appeals the trial court's summary dismissal of his
K.S.A. 2015 Supp. 60-1501 petition. On appeal, Dunlap argues that the trial court erred
when it dismissed his petition because: (1) the Kansas Department of Corrections
(KDOC) violated his due process rights throughout the disciplinary hearing process; and
(2) the KDOC systematically violates its own administrative rules and regulations.
Although some of Dunlap's arguments fail, the record reveals that Dunlap may have been
denied due process during his prison disciplinary hearing. Accordingly, the trial court
erred by summarily dismissing Dunlap's K.S.A. 2015 Supp. 60-1501 petition because he

was entitled to an evidentiary hearing. As a result, we reverse and remand to a different judge for further proceedings.

On January 1, 2015, Corrections Officer Livengood filed a disciplinary report against Dunlap alleging that Dunlap battered him in violation of K.A.R. 44-12-324 and threatened and intimidated him in violation of K.A.R. 44-12-306. In this report, Livengood stated:

> "I CSI Livengood picked up a piece of paper off of the Pod 2 Dayroom floor as [I] was attempting to unfold the paper Offender Dunlap [a]ttempted to grab it grabbing my hand instead he then let go [I] then gave him an order to lock down as he was going to his cell he kept yelling '[I] have friends on the outside', Therefore I CSI Livengood charge Offender Dunlap with violation of 44-12-324 Battery Class I and 44-12-306 Threatening and Intimidating Class I.

Dunlap was immediately placed in segregation. In the administrative segregation report, Corrections Officer Bryan Wiemers wrote that Dunlap was being placed in segregation because he grabbed Livengood's arm.

On January 20, 2015, Dunlap made a formal inmate request for a corrections officer to look at the security video footage of the incident. A corrections officer responded by telling Dunlap that he needed to "request the camera as a witness on [his] [disciplinary report]."

Dunlap's disciplinary hearing took place on January 22, 2015, and February 2, 2015. On a page entitled "Disposition of Disciplinary Case: Testimony," the hearing officer, Lieutenant McGuire, wrote the following information: (1) that another corrections officer had served Dunlap with a copy of his disciplinary report and witness forms; (2) that Dunlap "claimed he was not guilty"; (3) that on January 22, 2015, an unidentified person asked Dunlap, "Did you Reach for Paper?" [*sic*], and Dunlap

2

responded, "Yes, I did not touch [reporting officer; reporting officer's] yells and screams so loud that it scared me"; (4) that the hearing was continued on January 22, 2015, to February 2, 2015; and (5) that on February 2, 2015, Dunlap asked someone, presumably Livengood, "When did I touch [you]?" and this person responded, "When [Dunlap] reached for the paper." For the hearing on January 22, 2015, McGuire noted that Dunlap was on speaker phone and had been sworn in. For the hearing on February 2, 2015, McGuire wrote that Dunlap was "present or on speaker phone." McGuire included no other information in the hearing record.

McGuire found Dunlap guilty of both battery and threatening and intimidating. On the document finding Dunlap guilty, in a space labeled "disposition of evidence," McGuire wrote "N/A." As punishment, the KDOC removed 90 days of Dunlap's earned good time credit, fined Dunlap a total of $30, and placed Dunlap in disciplinary segregation for 14 days. The warden approved McGuire's decision.

Dunlap appealed to the Secretary of Corrections (Secretary). In his appeal, Dunlap provided a detailed factual background of the events surrounding his disciplinary hearing. According to Dunlap, he gave Lieutenant Buchannan a copy of his disciplinary report on January 20, 2015. At the hearing on January 22, 2015, Dunlap stated that he told McGuire he had witnesses he wanted to call, had a sworn and notarized affidavit of his testimony that he wanted to submit into evidence, and had previously submitted a request for the security video footage as evidence. Dunlap asserted that McGuire then continued the hearing, returned him to segregation, and watched the security video with Buchannan. Dunlap stated that after McGuire and Buchannan watched the security video, Buchannan, Wiemers, and Captain Hickson, all told him that there was no battery, that the warden was being informed, and that he would be released from segregation soon. Dunlap explained that on February 1, 2015, he filed a grievance against Livengood. Dunlap explained that he was upset because even though several corrections officers told him he was not guilty of anything, he remained in segregation. Dunlap stated that the next day,

3

February 2, 2015, McGuire called him on the phone and told him that he was finding him guilty. Dunlap asserted that when he told McGuire that he wanted to call certain witnesses, submit an affidavit into evidence, and present the security video as evidence, McGuire hung up the phone.

Based on the preceding events, Dunlap argued that his convictions and penalties should be reversed and expunged from his record because: (1) Livengood and McGuire violated KDOC disciplinary procedures, including failing to hold his hearing within the procedural time limits of K.A.R. 44-13-201; (2) McGuire refused to allow him to call witnesses, submit his sworn affidavit, or present the security video as evidence; and (3) McGuire never noted that he refused to allow him to call witnesses, submit his sworn affidavit, or present the security video in the hearing record. Dunlap alleged that the hearing record proved that he was innocent of both the battery and threatening or intimidating charges. Moreover, Dunlap alleged that Livengood's and McGuire's actions violated his due process rights.

The Secretary approved McGuire's decision, finding that some evidence supported the decision and that McGuire had substantially complied with KDOC procedures. Dunlap then filed a petition for writ of habeas corpus under K.S.A. 2015 Supp. 60-1501 with the Butler County trial court. In his petition, Dunlap argued that his due process rights had been violated because: (1) Livengood made frivolous allegations; (2) Livengood and McGuire violated KDOC disciplinary procedures, including failing to hold his hearing within the procedural time limits; (3) McGuire was biased and arbitrarily decided his case; and (4) McGuire prevented him from calling witnesses. Dunlap further asserted that the security video proved that he was innocent. In his petition, Dunlap explicitly noted that, as a result of his convictions, the KDOC penalized him by removing 90 days of his earned good-time credit, by fining him $30, and by placing him in segregation. Dunlap included Livengood's disciplinary report, the administrative

4

segregation report, McGuire's notes and decision, his written appeal to the Secretary, and the Secretary's decision as attachments to his K.S.A. 2015 Supp. 60-1501 petition.

Later, Dunlap filed a "motion to amend exculpatory evidence." In this motion, Dunlap emphasized that he was innocent and that the security video proved he was innocent. Additionally, Dunlap attached his inmate request form asking for a corrections officer to view the security video to this motion.

The trial court summarily dismissed Dunlap's motion, explaining:

"Disciplinary segregation, in itself does not implicate constitutional rights. The Court sees no violation of protected liberty interests. There is nothing atypical about petitioner's confinement. Also, some evidence supports conviction. Court will not substitute its opinion for that of hearing officer on factual matters. Petitioner failed to state a cognizable claim."

*Did the Trial Court Err When It Summarily Dismissed Dunlap's K.S.A. 2015 Supp. 60-1501 Petition?*

On appeal, Dunlap argues that the trial court erred when it summarily dismissed his K.S.A. 2015 Supp. 60-1501 petition. First, Dunlap argues that the penalties the KDOC imposed implicated his constitutional rights. Second, Dunlap argues that the KDOC violated his due process rights throughout the disciplinary hearing process. Based on these alleged due process violations, Dunlap asks this court to reverse and remand to the trial court for further proceedings.

The State counters that the trial court correctly dismissed Dunlap's K.S.A. 2015 Supp. 60-1501 petition because Dunlap failed to raise a cognizable due process claim. The State asserts that even if the KDOC committed some errors throughout the

5

disciplinary hearing process, those errors were harmless. The State further asserts that some evidence supported Dunlap's convictions.

*Applicable Law and Standard of Review*

To avoid summary dismissal, a "petitioner's allegations must be of shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). A trial court does not err when it summarily dismisses a K.S.A. 60-1501 petition "if, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists." *Johnson*, 289 Kan. at 648-49. Additionally, as long as some evidence supports the hearing officer's decision, the due process requirements of a prison disciplinary proceeding are satisfied. *Sammons v. Simmons*, 267 Kan. 155, 159, 976 P.2d 505 (1999). Nevertheless, a trial court errs when it summarily dismisses a K.S.A. 60-1501 petition if the petitioner has stated a claim under any possible theory. See *Washington v. Roberts*, 37 Kan. App. 2d 237, 240, 152 P.3d 660 (2007).

When reviewing the summary dismissal of a K.S.A. 60-1501 petition, an appellate court engages in a two-step analysis to determine whether the petitioner has been denied due process:

> "First, the court must determine whether the State has deprived the petitioner of life, liberty, or property. If so, the court next determines the extent and the nature of the process due. The question of whether an individual's constitutional rights have been violated is a question of law over which an appellate court exercises unlimited review." *Johnson*, 289 Kan. 642, Syl. ¶ 3.

Moreover, during this review, an appellate court must accept the facts alleged by the petitioner as true. *Washington*, 37 Kan. App. 2d at 240.

6

*Did Dunlap's Punishment Implicate His Constitutional Rights?*

As previously detailed, the trial court ruled that Dunlap failed to reach the second step of the two-step due process analysis. In its order summarily dismissing Dunlap's motion, the trial court explained that it "[saw] no violation of protected liberty interests" because "[d]isciplinary segregation, in itself does not implicate constitutional rights." Yet, this is obviously incorrect.

Both in his K.S.A. 2015 Supp. 60-1501 petition and attachments, Dunlap noted that the KDOC penalized him by removing 90 days of his earned good-time credit and by fining him $30. Inmates have a protected liberty interest in good-time credits already earned. See *Hardaway v. Larned Correctional Facility*, 44 Kan. App. 2d 504, 505, 238 P.3d 328 (2010). Inmates additionally have a protected property interest in their money; thus, any fine, no matter how small, implicates their protected constitutional rights. See *Washington*, 37 Kan. App. 2d at 240. Moreover, the State concedes that the removal of good-time credit and the $30 fine implicated Dunlap's constitutional rights.

Accordingly, the trial court clearly erred by ruling that the KDOC's punishment did not implicate Dunlap's protected constitutional rights. As a result, this court must proceed to the second step of the due process analysis to determine whether the KDOC violated Dunlap's due process rights.

*Did the Trial Court Err by Summarily Dismissing Dunlap's K.S.A. 2015 Supp. 60-1501 Petition?*

Turning to the second step of the analysis, this court has held that inmates in disciplinary proceedings are not due the full panoply of rights defendants in criminal proceedings are entitled. *Washington*, 37 Kan. App. 2d at 241 (quoting *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 [1974]). Nonetheless,

7

inmates have some rights which include "an impartial hearing, a written notice of the charges to enable inmates to prepare a defense, a written statement of the findings by the factfinders as to the evidence and the reasons for the decision, and the opportunity to call witnesses and present documentary evidence." *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, Syl. ¶ 6, 24 P.3d 128 (2001).

On appeal, Dunlap argues that his due process rights were violated: (1) by McGuire's failure to comply with procedural time limits; (2) by McGuire's decision that he could not present evidence; and (3) by McGuire's partiality. Although not all of Dunlap's arguments succeed, Dunlap's arguments concerning his ability to present evidence and McGuire's partiality involve serious due process violations as inmates have a right to present evidence and a right to an impartial hearing. See *In re Pierpoint*, 271 Kan. 620, Syl. ¶ 6. Moreover, as detailed below, the hearing record does not refute Dunlap's arguments. Because summary dismissal is appropriate only when a petitioner's K.S.A. 60-1501 petition and attachments definitively prove that the petitioner is not entitled to relief, the trial court erred by summarily dismissing Dunlap's K.S.A. 2015 Supp. 60-1501 petition. Consequently, we reverse and remand to the trial court for further proceedings.

*Procedural Time Limits*

First, Dunlap argues that his due process rights were violated by McGuire's failure to conduct the hearing in accordance with K.A.R. 44-13-401 and K.A.R. 44-13-402. Under K.A.R. 44-13-401, an inmate's disciplinary hearing must be "held not less than 24 hours or more than seven working days after the service of notice of charge on the inmate." Under K.A.R. 44-13-402, the hearing officer may grant a continuance of an appropriate and reasonable length. It seems that Dunlap believes that the January 22, 2015, continuance was not authorized, which resulted in his hearing being held more than 7 working days after he was served with notice of the charges.

8

Yet, as the State correctly points out in its brief, "[t]he mere fact that a hearing officer in a prison discipline case has not followed DOC procedural regulations does not of itself violate fundamental fairness that rises to an unconstitutional level." *Anderson v. McKune*, 23 Kan. App. 2d 803, 811, 937 P.2d 16, *cert. denied* 522 U.S. 958 (1997). To successfully argue that the procedural errors resulted in constitutional violations, an inmate must allege much more. 23 Kan. App. 2d at 811. Here, Dunlap merely alleges that McGuire's failure to hold the hearing within the procedural time limits of K.A.R. 44-13-401 and K.A.R. 44-13-402 violated his due process rights. By failing to argue how McGuire's errors resulted in prejudice, Dunlap has failed to successfully argue that the errors amounted to a due process violation.

*Admission of Evidence*

Next, Dunlap argues that McGuire violated his due process rights by preventing him from presenting certain evidence at his disciplinary hearing. Specifically, Dunlap alleges that McGuire prevented him from admitting a sworn affidavit into evidence, prevented him from calling witnesses, and ignored the exculpatory security video.

Regarding the sworn affidavit, Dunlap asserts that McGuire violated his due process rights when he failed to allow him to admit a sworn affidavit into evidence. In his appeal to the Secretary, Dunlap explained that this sworn affidavit was of his testimony. Yet, Dunlap has failed to include the sworn affidavit in the record on appeal. An appellate court will not find error if the party claiming error fails to designate a record that affirmatively shows prejudicial error. *State v. Bridges*, 297 Kan. 989, 1001, 306 P.3d 244 (2013). Accordingly, Dunlap has failed to provide this court with an adequate record to review his claim. Furthermore, Dunlap has made no effort to explain what pertinent information his sworn affidavit contained. Because habeas petitioners must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature," Dunlap has not provided enough information about the affidavit to prove that McGuire's

9

refusal to consider it amounted to a violation of his constitutional rights. See *Johnson*, 289 Kan. at 648.

Next, Dunlap alleges that McGuire refused to let him call witnesses who would testify on his behalf. In his appeal to the Secretary, Dunlap explained that McGuire denied both his witness requests. The State rebuffs Dunlap's arguments, asserting that Dunlap only wanted to call officers who had viewed the security video to testify on his behalf. The State seems to believe that such witness testimony would be irrelevant, having no impact on the outcome of Dunlap's hearing.

Nevertheless, in Dunlap's appeal to the Secretary, Dunlap asserted that he had multiple witness he wanted to call, not just officers who had viewed the security video. Additionally, the State's argument that the testimony from officers who had viewed the security video would be irrelevant is unpersuasive. In a case where an inmate accuses the hearing officer of being biased and ignoring exculpatory evidence, another officer's testimony confirming that the hearing officer is in fact biased and ignoring exculpatory evidence would be vital to an inmate's defense.

Moreover, accepting Dunlap's argument as true, Dunlap raises a valid due process claim that could not be summarily dismissed. Dunlap alleges that he made oral witness requests at the January 22, 2015, hearing, and the February 2, 2015, hearing. Inmates in a disciplinary proceeding have the right to call witnesses. See K.A.R. 44-13-101(c)(5); *In re Pierpoint*, 271 Kan. 620, Syl. ¶ 6;. Under K.A.R. 44-13-403(c), a hearing officer must entertain witness requests made at the disciplinary hearing. Although such requests should be granted only under exceptional circumstances, the hearing officer must rule on the witness requests once made. See K.A.R. 44-13-403(o). After ruling on the requests, under K.A.R. 44-13-502a(c)(5), the hearing officer must provide a complete summary of "any witnesses whose testimony was requested and denied and the reasons for that denial" in the hearing record.

10

Here, the hearing record contains a couple of statements that Dunlap and Livengood seemingly made but nothing else. Therefore, nothing in the hearing record speaks to Dunlap's assertion that McGuire prevented him from calling witnesses. Again, this court must accept the facts alleged by Dunlap as true. See *Washington*, 37 Kan. App. 2d at 240. Accepting Dunlap's allegation as true, McGuire clearly violated Dunlap's due process rights by preventing him from calling witnesses. Thus, the trial court erred by summarily dismissing his K.S.A. 2015 Supp. 60-1501 petition.

Furthermore, it was error to summarily dismiss Dunlap's allegation that McGuire ignored the exculpatory security video. Under K.A.R. 14-13-101(c)(3), an inmate is entitled to present documentary evidence. This documentary evidence includes security videotape evidence, which shall be viewed outside the presence of the inmate. See K.A.R. 44-13-403(l)(1). Once an evidentiary request is made, the hearing officer must rule on that request. K.A.R. 44-13-403(j). After ruling on the evidentiary request, the hearing officer must summarize the ruling in the hearing record. See K.A.R. 44-13-502a(a) (requiring hearing officers to summarize their compliance with K.A.R. 44-13-403 provisions in the hearing record).

In this case, Dunlap asserts that McGuire and other corrections officers viewed the security video and determined that Dunlap was innocent of the charges. Then, after Dunlap filed a grievance against Livengood, McGuire called Dunlap on the phone, told him that he could not submit any evidence in his defense, and found him guilty of battery and threatening and intimidating. In essence, Dunlap argues that McGuire ignored the exculpatory security video because he filed a grievance against Livengood.

Based on the condition of the hearing record, it is unclear if Dunlap asked McGuire to watch the security video, if McGuire watched the security video, if McGuire ignored exculpatory evidence within the security video, or if McGuire made any ruling whatsoever regarding the security video. The State suggests that if Dunlap had actually

11

requested that the corrections officers view the security video, McGuire would have noted Dunlap's request in the hearing record. Nevertheless, the State's argument is pure speculation. Based on the hearing record, the State's theory is no more likely than Dunlap's theory. That is, the hearing record contains so little information that either theory could ultimately be correct.

More importantly, however, this court must accept the facts alleged by Dunlap as true. See *Washington*, 37 Kan. App. 2d at 240. Thus, what the State alleges actually happened has no bearing on whether the trial court erred by summarily dismissing Dunlap's K.S.A. 2015 Supp. 60-1501 petition. Dunlap alleges that McGuire ignored the exculpatory security video even though it proved he was innocent of the battery and threatening and intimidating charges. Clearly, a hearing officer's decision to ignore exculpatory evidence constitutes "shocking and intolerable conduct . . . of a constitutional stature." *Johnson*, 298 Kan. at 648. Consequently, the trial court erred by dismissing Dunlap's K.S.A. 2015 Supp. 60-1501 petition.

*Impartial Hearing*

Finally, Dunlap contends that McGuire violated his due process rights by failing to provide him with an impartial hearing. As detailed in the preceding section, Dunlap alleges that his hearing was not impartial because the charges against him were dropped and then reinstated after he filed a grievance against Livengood. Dunlap asserts that the day after he filed his grievance, McGuire called him on the phone, told him he was guilty of the charges, and told him that he could not present any evidence. Inmates are entitled to an impartial hearing; thus, when the KDOC fails to provide an inmate with an impartial hearing the KDOC has violated that inmate's due process rights. See *Washington*, 37 Kan. App. 2d at 241. The State does not explicitly address Dunlap's argument that his hearing was impartial in its brief. Accepting Dunlap's allegations as true, Dunlap's impartiality argument raises a substantial due process claim which may

12

entitle him to relief. Thus, the trial court erred by summarily dismissing Dunlap's K.S.A. 2015 Supp. 60-1501 petition.

*Recent Kansas Court of Appeals Cases Support that the Trial Court Erred*

Moreover, recent and factually similar Kansas Court of Appeals cases support that the trial court erred. In *Jamerson v. Heimgartner*, No. 112,623, 2015 WL 3875374 (Kan. App. 2015) (unpublished opinion), for example, Jamerson argued that his due process rights were violated when the hearing officer refused to allow him to call witnesses. The trial court summarily denied Jamerson's K.S.A. 60-1501 petition. This court reversed the trial court's summary dismissal because the hearing record in Jamerson's case did not address whether "Jamerson properly moved to add the witness in question at the disciplinary hearing" or "whether the hearing officer ruled on the motion." 2015 WL 3875374, at *4. The lack of information in the hearing record meant that Jamerson's allegations could not be proved or disproved. Accordingly, summary dismissal was improper. The *Jamerson* court further rejected the State's argument that "if Jamerson had presented any motions at his disciplinary hearing, it would have been reflected in the hearing officer's notes." 2015 WL 3875374, at *4. The *Jamerson* court explained that "[a]lthough this may be true, this is a question of fact that we cannot determine on appeal." 2015 WL 3875374, at *4. As a result, the *Jamerson* court reversed and remanded for further proceedings. 2015 WL 3875374, at *4.

In *Deere v. Heimgartner*, No. 113,994, 2015 WL 8590897 (Kan. App. 2015) (unpublished opinion), Deere alleged that "he was denied due process because he wasn't allowed to call several witnesses, he wasn't allowed to present some documentary evidence, and the hearing officer was biased against him." 2015 WL 8590897, at *1. The trial court summarily dismissed Deere's K.S.A. 60-1501 petition. Because the hearing officer's sparse notes contained no information about Deere's witness requests, Deere's inability to present documentary evidence, or Deere's allegation that the hearing officer

13

was biased, the *Deere* court determined that summary dismissal was improper. Thus, the *Deere* court reversed and remanded to the trial court for further proceedings. 2015 WL 8590897, at *3-4.

In *Robertson v. Call*, No. 112,132, 2015 WL 326677 (Kan. App. 2015 (unpublished opinion), *rev. denied* 301 Kan. __ (May 12, 2015), Robertson alleged in a K.S.A. 60-1051 petition that the prison had deprived him of his religious freedom in violation of the Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution by preventing him from consulting with his rabbi in person. The trial court summarily dismissed Robertson's petition. Because the hearing record did not provide the *Robertson* court with enough information to determine if Robertson's rights had been violated, this court reversed and remanded to the trial court for an evidentiary hearing on Robertson's constitutional claims. 2015 WL 326677, at *4-5.

*Conclusion*

It is important to reiterate that the disciplinary hearing record in this case is wholly inadequate. In his appeal to the Secretary, which he attached to his K.S.A. 2015 Supp. 60-1501 petition, and in his petition, Dunlap asserted that there was insufficient evidence to convict him of battery under K.A.R. 44-12-324 and of threatening and intimidating under K.A.R. 44-12-306. Dunlap pointed out how the elements of those charges had not been met and requested that his convictions be expunged from his record. The trial court rejected Dunlap's argument, finding that the KDOC's hearing record included some evidence to support Dunlap's convictions. In its brief, the State asserts that the trial court correctly ruled that some evidence supported McGuire's decision. It seems the State believes that if some evidence supports the hearing officer's decision, it does not matter if an inmate's due process rights were violated.

14

As the *Deere* court stated, however, this court "cannot uphold the result of a hearing in which the inmate's due-process rights were violated just because some evidence of his guilt was presented during a fundamentally unfair hearing." 2015 WL 8590897, at *4. Moreover, in this case, the State's assertion is wrong; the hearing record was insufficient. To summarize, the only information McGuire included in the hearing record was: (1) that Dunlap testified he touched the paper but not Livengood; (2) that Dunlap testified that Livengood's yells and screams were so loud that it scared him; (3) that a person, presumably Livengood, testified that Dunlap touched him when he reached for the paper; and (4) that the disposition of the evidence was "N/A."

Despite the inadequate hearing record, Dunlap's attorney has not challenged the sufficiency of the evidence against Dunlap on appeal. Nevertheless, in the past, this court has emphasized that when the KDOC violates an inmate's due process rights, the equitable remedy of expungement is an available remedy. See *Shepherd v. Davies*, 14 Kan. App. 2d 333, 340-41, 789 P.2d 1190 (1990). Given the insufficiencies of the hearing record, on remand, if the KDOC cannot provide the court with more substantial evidence disproving Dunlap's due process allegations, the trial court should consider this equitable remedy.

*Did the Trial Court Err by Not Addressing Dunlap's Argument that the Department of Corrections Systematically Violates Its Administrative Rules and Regulations?*

Next, Dunlap argues that the trial court erred because it never addressed his argument that KDOC employees systematically violate KDOC administrative rules and regulations. In making this argument, however, Dunlap essentially repeats his arguments about how McGuire violated his due process rights, *i.e.*, McGuire did not comply with procedural time limits, McGuire did not use the security video even though it proved he was innocent, and McGuire refused to allow him to call witnesses or submit a sworn affidavit into evidence. The only evidence Dunlap offers in support of this generalized

15

argument is that the KDOC violated its rules in his case. Accordingly, we have already addressed each of Dunlap's arguments. Because Dunlap's arguments are not truly distinct arguments, Dunlap is not entitled to separate relief on this issue. Thus, the trial court did not err by failing to separately address Dunlap's argument that KDOC employees systematically violate KDOC rules and regulations.

After reviewing the record in this case and reviewing the decisions in *Jamerson*, *Deere*, and *Robertson*, we determine that unusual situations exist in these cases. As outlined earlier, prison disciplinary hearings must meet minimal procedural due process requirements when an inmate's conviction implicates a protected liberty interest. In each of the previously mentioned cases, a protected liberty interest was implicated. We note that the same district court judge summarily dismissed the K.S.A. 60-1501 petition in each of these cases. The record in each case, however, showed that the prison inmate may have been denied procedural due process during his prison disciplinary hearing. Judge Sanders' quick rejection of Dunlap's contention that his procedural due process rights were violated during his disciplinary hearing, coupled with Judge Sanders' summary dismissals of the K.S.A. 60-1501 petitions in the other aforementioned cases, lead us to believe a remand to a different judge is necessary. This conclusion is reinforced when Judge Sanders has repeatedly held fast to an erroneous view: that inmates' K.S.A. 60-1501 petitions may be summarily dismissed without an evidentiary hearing even though the record fails to show that the minimal procedure due process requirements have been met in the prison institutional disciplinary hearing. This error has been previously called to Judge Sanders' attention in *Leek v. Simmons*, No. 99,184, 2008 WL 2796477, at *1-2 (Kan. App. 2008) (unpublished opinion): Leek alleged that his due process rights were violated when the hearing officer at his prison disciplinary refused to call the witnesses that he had listed on his witness request form. The trial court summarily dismissed Leek's petition for failure to state a claim upon which relief can be granted. The *Leek* court reversed the trial court's summary dismissal because the hearing record supported the

16

alleged facts that Leek raised a valid claim and may have been entitled to relief. 2008 WL 2796477, at *3-4.

Thus, we reverse and remand to a different judge.

Affirmed in part, reversed in part, and remanded to a different judge with directions for further proceedings consistent with this opinion.