NOT DESIGNATED FOR PUBLICATION

No. 114,670

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROBERTO S. RINCON,
*Appellant*,

v.

DAN SCHNURR,
*Appellee*.

MEMORANDUM OPINION

Appeal from Ellsworth District Court; RON SVATY, judge. Opinion filed May 27, 2016.
Reversed.

*Roberto S. Rincon*, appellant pro se.

*Robert E. Wasinger*, of Kansas Department of Corrections, of Ellsworth, for appellee.

Before HILL, P.J., STANDRIDGE and ATCHESON, JJ.

*Per Curiam*:  Roberto S. Rincon, an inmate in the Kansas correctional system, appeals the dismissal of a habeas corpus action he filed in Ellsworth County District Court challenging administrative discipline imposed on him for violating prison rules. Rincon has shown that insufficient evidence supported the disciplinary action. We, therefore, reverse the district court and grant him relief under K.S.A. 60-1501 by setting aside the administrative violation and vacating the punishment imposed.

While incarcerated at the state prison in Norton, Rincon participated in a work program doing unskilled construction and maintenance on municipal property. According

1

to the administrative charge, Rincon punched Gerald Speer, his program supervisor, in the stomach on July 29, 2015, while they were working. Speer is a civilian employee of the City of Norton. Rincon was cited for battery, a class I offense violating prison rules. See K.A.R. 44-12-324.

Rincon requested an administrative hearing on the alleged violation and requested Speer appear at the hearing. Because Speer is not an employee of the Kansas Department of Corrections, the hearing officer could issue a summons requesting his voluntary appearance at the hearing but had no means to compel his attendance. See K.A.R. 44-13-307(e). The record fails to indicate the Department ever sent a summons to Speer or otherwise communicated a request that he appear at the hearing.

At the administrative hearing, the Department presented a report from Corrections Officer T.L. Smothers. The report included a summary of Smothers' interview of Speer. Speer told Smothers that Rincon had punched him in the stomach three times in quick succession. Smothers testified at the hearing and acknowledged he did not see the incident. Rincon questioned Smothers about what Speer had said. The Department also offered a notarized statement from Speer that was received over Rincon's objection. Rincon made it clear he wanted Speer present in person. The notarized statement basically recounted that during a work break, Rincon approached Speer and struck him in the stomach three times. Speer described himself as "totally caught off guard" by Rincon's actions. The statement indicated inmate James T. Brown, IV, was within a few feet of the two at the time. Speer identified two other inmates in the general vicinity.

Rincon testified that he approached Speer and punched toward him but did not make physical contact. He suggested this was horseplay of the sort Speer permitted on the work detail. Rincon speculated that Speer reported him because he had been trying to get off the work crew. Brown testified that he saw Rincon "shadow box" with Speer

2

during a work break. He said Rincon did not actually strike Speer. Brown also stated Speer permitted and engaged in some horseplay.

The hearing officer determined Rincon committed the charged violation and imposed a penalty of 20 days in disciplinary segregation, restriction of privileges for 60 days, and loss of 60 days of earned good-time credit. Rincon initiated an administrative appeal of the determination. The record indicates Rincon exhausted that process. In the meantime, he was transferred from the Norton prison to the one in Ellsworth. We do not understand the transfer to have anything to do with the issues before us. But as a result of the transfer, venue for Rincon's 60-1501 petition lay in Ellsworth County.

In October 2015, Rincon filed his petition in the district court and alleged both that he had been denied due process and that the disciplinary action rested on inadequate evidence. Defendant Dan Schnurr is the warden of the Ellsworth prison. The district court summarily dismissed the petition for failing to state a claim but provided no narrative explanation of the ruling. Rincon has appealed the dismissal to us.

When the district court denies a 60-1501 petition without hearing evidence, we are in an equally good position to determine if the petition and the relevant record support a cognizable claim. We understand the administrative hearing record to be part of the appellate record. The issues on appeal may be resolved from an examination of the hearing record made in light of the parties' arguments. Accordingly, we owe no particular deference to the district court's ruling. See *Johnson v. State*, 289 Kan. 642, 648-49, 215 P.3d 575 (2009). The petition itself should be construed in a light favoring the inmate. *Shepherd v. Davies*, 14 Kan. App. 2d 333, 335, 789 P.2d 1190 (1990).

To seek habeas corpus relief, an inmate must allege a constitutional deprivation. Rincon has done so. The loss of a protected liberty interest or property right without constitutionally adequate due process is sufficient. See *Germann v. Conover*, No. 110,643

2014 WL 3397184, at *1 (Kan. App. 2014) (unpublished opinion). Earned good-time credit reflects a liberty interest in that the credit shortens an inmate's incarceration. *Kesterson v. State*, 276 Kan. 732, Syl. ¶ 2, 79 P.3d 1074 (2003). So the loss of that credit as a punishment entails the deprivation of a liberty interest triggering constitutional due process protections that may be vindicated in a 60-1501 action.

As guaranteed in the Fourteenth Amendment to the United States Constitution, due process involves an especially flexible concept that must be shaped to the nature of the interest affected and the circumstances of any potential diminution of the interest. See *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978). Some situations demand a high degree of process or procedural protection, such as a criminal prosecution, while others do not. In a prison disciplinary proceeding, an inmate's constitutional right to procedural due process entails:  (1) written notice of the charges sufficient to permit preparation of a defense; (2) an impartial hearing and hearing officer; (3) an opportunity to call witnesses and to present evidence; and (4) a written statement of the factual findings and reasons for the disciplinary decision. See *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 627, 24 P.3d 128 (2001) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-66, 94 S. Ct. 2963, 41 L. Ed. 2d 935 [1974]).

To satisfy due process protections, there need only be "some evidence" in a prisoner disciplinary proceeding supporting the hearing officer's determination of a violation. *Superintendent v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985); *Sammons v. Simmons*, 267 Kan. 155, 158-59, 976 P.2d 505 (1999) (recognizing *Hill* as supplying the governing standard and quoting at length from that decision). The inmate bears the burden of proving prison officials failed to satisfy that comparatively low evidentiary requirement. *Sammons*, 267 Kan. at 158. For that purpose, a reviewing court must accept the evidence duly admitted in the disciplinary process in a light most favorable to the penal institution and, therefore, must resolve conflicts in the evidence

4

against the inmate. *Hill*, 472 U.S. at 455-56; *Sammons*, 267 Kan. at 158 (quoting *Hill*, 472 U.S. at 455-56).

In *Hill*, the Court fashioned those standards to balance inmates' due process rights against a penal institution's need to operate safely and efficiently, especially given the nature of its purpose and clientele. Acknowledging the standards to be relaxed, the Court held that requiring "a modicum" of evidence supporting the disciplinary action would sufficiently serve inmates' due process rights by "prevent[ing] arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." 472 U.S. at 455.

Rincon raises two objections to the administrative hearing that he says deprived him of due process. First, he complains that he was not permitted to question Speer and the hearing officer erred in admitting Speer's notarized statement. Basically, Rincon argues that adequate due process in a prison disciplinary proceeding includes the right of an inmate to confront the witnesses offering evidence against him. To the extent the issue has been addressed, the courts generally have found no due process right of confrontation in those proceedings. See *Wolff*, 418 U.S. at 567-68 (declining to find confrontation and cross-examination to be components of constitutional due process in inmate disciplinary proceedings); *Mendoza v. Miller*, 779 F.2d 1287, 1292 n.3 (7th Cir. 1985) (right to confront witnesses may be limited in the interests of prison security); *Choyce v. Cockrell*, 51 Fed. Appx. 483, 2002 WL 31319342 (5th Cir. 2002). In *Washington v. Roberts*, 37 Kan. App. 2d 237, 242, 152 P.3d 660 (2007), this court acknowledged the discussion in *Wolff* weighing against a constitutional due process right to confront and cross-examine witnesses. The court found no due process violation in that case under quite different circumstances. The inmate wanted to confront and question *in person* the corrections officer reporting the alleged disciplinary violation. The request was denied. But the inmate was permitted to question the officer during a telephone conference call after the officer had been placed under oath. 37 Kan. App. 2d at 242.

Consistent with that authority, we presume Rincon had no due process right to confront and cross-examine Speer. In turn, we decline to grant him relief on the grounds the Department had to produce Speer at the disciplinary hearing or otherwise make him available for cross-examination. We reject Rincon's subsidiary argument that because the Department apparently made no effort to issue a summons to Speer for his voluntary appearance—contrary to its own rules—the failure amounted to a constitutional due process violation. A state agency's failure to follow its own rules does not in and of itself necessarily create a due process violation. See *Taylor v. Kansas Dept. of Health & Environment*, 49 Kan. App. 2d 233, 242, 305 P.3d 729 (2013), *rev. denied* 299 Kan. 1274 (2014); *Washington*, 37 Kan. App. 2d at 242.

We turn to Rincon's second argument—the Department failed to present "some evidence" establishing the disciplinary violation. We reiterate that the some-evidence standard is a constitutional requirement. In other words, the Department can impose punishment on an inmate entailing the loss of a protected liberty interest or property right only upon presentation of "some evidence" of a violation.

There is a predicate question that must be answered in determining if the Department has presented some evidence in a given disciplinary proceeding. What can properly be admitted and considered as evidence? Although the United States Supreme Court did not address that precise issue in *Wolff*, the court's discussion of how much process is constitutionally due inmates in disciplinary proceedings is highly instructive. Apart from the required protections we earlier listed, which are drawn directly from *Wolff*, the Court repeatedly emphasized that prison officials should be given great latitude in fashioning disciplinary processes that balance the institutional need for safety and security with an inmate's right to a fair hearing. *Wolff*, 418 U.S. at 562 ("disciplinary proceedings must be structured by prison authorities"); 418 U.S. at 563 ("there would be great unwisdom in encasing the disciplinary procedures in an inflexible constitutional

straitjacket that would necessarily call for adversary proceedings typical of the criminal trial"); 418 U.S. at 566-67 (prison officials must be afforded "necessary discretion without being subject to unduly crippling constitutional impediments[,] . . . . and we stop short of imposing a more demanding rule with respect to witnesses and documents"); 418 U.S. at 568 ("Within the limits set forth in this opinion we are content for now to leave the continuing development of measures to review adverse actions affecting inmates to the sound discretion of corrections officials administering the scope of such inquiries."). Accordingly, prison officials generally and the Department in particular may adopt rules of evidence and procedure for inmate disciplinary proceedings, so long as those rules are consonant with required (and modest) due process protections. Those rules need not conform to what is permitted in either civil or criminal judicial proceedings. The Department has exercised that prerogative. In turn, we can and should apply those evidentiary rules to sort the admissible from the inadmissible in a disciplinary proceeding when the sufficiency of the evidence has been challenged.

Of particular significance here, K.A.R. 44-13-405a(d) provides: "With the charged inmate's consent, the hearing officer may admit the affidavit of a non-party witness in lieu of an appearance by the witness. If a witness is denied or cannot attend in a timely manner, the hearing officer may also admit the affidavit of this witness." The rule permits a hearing officer to admit an affidavit from a witness who cannot attend the hearing. Speer, as someone who could not be compelled to appear, falls within the scope of K.A.R. 44-13-405a(d).

The Department did not offer an affidavit from Speer. It presented only a notarized statement. And Rincon objected. The difference between an affidavit and a notarized statement is material. An affiant swears to the truth of an affidavit's content and would be subject to perjury for deliberately making a false representation. A notarized statement is not made under oath. The notary simply verifies that the individual signing the statement is the person identified in the statement as its author. See K.S.A. 53-502(a) ("notarial act"

7

defined to include distinct functions of "witnessing or attesting a signature" and "taking a verification upon oath or affirmation"); *Clark v. State*, No. 109,982, 2014 WL 4916462, at *2 (Kan. App. 2014) (unpublished opinion) (pointing out difference between notarized statement and affidavit), *rev. denied* 302 Kan. ___ (July 24, 2015). Speer's statement does not purport to have been given under oath, and nothing on the face of the document suggests otherwise.

In K.A.R. 44-13-405a(d), the Department recognizes that the taking of an oath confers a degree of trustworthiness to the written representations and, in turn, aids a factfinder in sorting out truth from mendacity. The evidentiary requirement makes sense and more than satisfies the due process protections for an inmate disciplinary proceeding. See *Clark*, 2014 WL 4916462, at *2 ("The solemnity of an oath and the possibility of criminal prosecution for knowingly making a false representation lend some trustworthiness to a written statement."); *In re Guardianship & Conservatorship of L.M.H.*, No. 108,297, 2013 WL 2395900, at *13 (Kan. App. 2013) (unpublished opinion) ("[T]he principal mechanisms for measuring the candor and reliability of a witness [are]: (1) the taking of an oath to tell the truth; (2) the rigor of cross-examination to test the statements; and (3) the fact-finder's opportunity to gauge demeanor."). Consistent with K.A.R. 44-13-405a(d), the hearing officer should not have admitted and considered the unsworn statement from Speer, especially in the face of Rincon's objection.

In turn, applying the Department's own evidentiary rules, we should not and do not consider Speer's statement in determining if the evidence presented at the disciplinary hearing cleared the requisite "some evidence" standard. Likewise, the testimony and report of Smothers could not have been admitted for the purpose of establishing what Speer witnessed. Smothers' account simply passed along an unsworn version of events from Speer. Because Speer turned out to be an absent witness, that secondhand version could not substitute for an affidavit from him as required by K.A.R. 44-13-405a(d). To hold otherwise would promote a strange anomaly allowing the Department to utterly

8

ignore K.A.R. 44-13-405a(d) by simply having someone interview an unavailable witness and then testify at the hearing to the substance of the interview. There isn't that much play in the Department's rules.

Without Speer's account of his interaction with Rincon, the hearing officer did not have "some evidence" supporting the disciplinary violation. Quite the contrary. The officer had no evidence. Without belaboring the point, we, therefore, conclude the Department violated Rincon's due process rights by finding a disciplinary violation and imposing punishment. We reverse the district court's dismissal of the 60-1501 petition and direct the Department to rescind the disciplinary violation and to restore to Rincon earned good-time credit of 60 days.

Reversed with directions.